# UNITED STATES *v.* PIATT AND SALISBURY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 166.  Submitted January 23, 1895. — Decided March 4, 1895.

In March, 1878, P. contracted to carry the mails three times a week for four years on route 36,107, commencing July 1, 1878, and entered on the performance of his contract.  On the 5th day of the following December, in consequence of false and fraudulent sworn statements made by him concerning the number of horses and men that would be required to expedite the service by reducing the time, a large additional compensation was allowed him by the Postmaster General for that purpose.  On the 13th of the same December he sublet his contract to S. with the consent of the Department, and the service was from that time performed by S. Further increased allowances, based on like fraudulent statements by P. were made in January and July, 1879, and assented to by P. and S.  The amount so fraudulently received during the term of service was $99,556.20. The government sued P. and S. to recover back that sum.  In the first count the above facts were set forth and it was alleged that the false statements were designed to mislead and did mislead the Post Office Department.  A second count was for money had and received.  A third count set forth the same facts and averred that the money had been paid in mistake of fact, and had been received contrary to the provisions of Rev. Stat. § 3961.  No process was served upon P., and he did not appear. S. appeared and demurred, and the demurrer was sustained.  Each was cited in the writ of error, and service acknowledged by the attorney for both.  *Held,*

(1) That the statements regarding the "horses and men" required for the expedited service came within the statement as to "stock and carriers" required therefor, as provided in Rev. Stat. § 3961;

(2) That P. and S. were bound by these statements and were estopped from asserting that it was not intended thereby to bring the contract within the statute;

(3) That the demurrer admitted the fact that the increase had been allowed on the basis of the false representation;

(4) That the court below erred in sustaining the demurrer to the third count;

(5) That the defendants having each participated in the transaction, were properly sued jointly;

(6) That the demurrer should have been overruled.

THE case is stated in the opinion.

*Mr. Solicitor General* for the plaintiffs in error.

*Mr. Monroe Salisbury* in person for the defendant in error Salisbury.

No appearance for defendant in error Piatt.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was instituted by the United States to recover from the defendants in error certain moneys claimed to have been paid to them for services in carrying the mail, in excess of the amount to which they were legally entitled.

The first count alleges in substance that on March 15, 1878, the defendant Piatt contracted in writing with the United States, through the Postmaster General, to carry the mail three times a week for four years from July 1, 1878, for a consideration of $16,500 per annum, on the route then known as No. 36,107, between Bozeman, Montana, by way of Shields River, Crow Agency, Stillwater, Head of Navigation, Pompey's Pillar, Fort Peace, and Big Horn City, to Tongue River and back. By power of attorney, dated August 15, 1878, Piatt authorized the defendant Salisbury to collect from the Auditor of the Treasury for the Post Office Department all pay to become due for carrying the mails upon that route; and subsequently, on December 13, 1878, with the permission of the Post Office Department, he sublet his contract to Salisbury. Piatt entered upon and continued the performance of this service from July 1, 1878, until December 13, 1878, from which date the service was performed by Salisbury.

. For the purpose of expediting the service, the Post Office Department, by order dated December 5, 1878, on agreement with Piatt shortened the schedule of departures and arrivals on the above route after December 16, 1878, by reducing the time from 132 hours to 72 hours in summer and 96 hours in winter, allowing therefor additional compensation of $16,500 per annum, in supposed accordance with the provisions of section 3961 of the Revised Statutes of the United States. A

similar order was made January 17, 1879, allowing an additional annual sum of $3542.92 from January 25, 1879, for an increased distance on the route of 35 miles, such allowance being computed *pro rata* upon the basis of the compensation previously allowed. A further order dated July 15, 1879, increased the service to seven trips a week from August 1, 1879, for which the additional sum of $48,723.89 per annum was allowed upon the same basis of compensation. Both Piatt and Salisbury consented to the conditions of these orders.

Piatt procured the issuing of the above orders amending the original contract. They were issued solely upon the basis of certain representations made in his sworn statement dated August 16, 1878, to the effect that to carry the mail upon said route three times a week, on a schedule of 132 hours, required 26 men and 90 horses, while the proposed expedited schedule of 72 hours in summer and 96 hours in winter would require 48 men and 200 horses. This statement was wholly false and fraudulent in that it alleged an increase of 22 men and 110 horses necessary to perform the expedited schedule, whereas in fact neither Piatt nor Salisbury ever required or used in performing the mail service, three times a week or seven times a week, more than 34 men and 100 horses, being 14 men and 100 horses less than Piatt alleged in his sworn statement were necessary for performing said expedited service three times a week. By means of such fraudulent representations by Piatt, and by means of false vouchers presented to the Post Office Department, Piatt and Salisbury received from the plaintiff a larger sum of money than they were lawfully entitled to receive. The sum so received by them during the period of their service, by means of such false statements and fraudulent vouchers, was $261,016.50, being $99,556.20 in excess of the amount that could, after certain reductions and remissions, be lawfully paid to them. The false statements above referred to were designed to mislead and did mislead the Post Office Department of the United States, and the defendants were entitled to receive from the United States for such service the sum of $148,438.23 and no more.

Payment of such excess having been demanded and refused,

judgment was asked against the defendants for $99,556.20, with interest from August 21, 1882, and costs of suit.

The second count is the common law count for money had and received.

The third count sets forth the same facts as are embodied in the first count, and alleges that plaintiff's officers were induced to pay the $99,556.20 in mistake of fact, and that that sum was received by defendants contrary to section 3961 of the Revised Statutes of the United States.

The payments referred to are set out in full in an exhibit showing the amounts defendants were lawfully entitled to receive on the basis of the actual increase of stock and carriers consequent upon the reduction in running time as before mentioned.

Piatt was not served with process, nor did he appear or plead. Service of process was had upon Salisbury, who appeared and demurred both generally and specially to the complaint.

The court below sustained the demurrer and dismissed the complaint as to both defendants. Each defendant is cited in the writ of error upon which this action is before us, and service acknowledged by the attorney of both.

The plaintiff in error has assigned the following errors: 1. That the Circuit Court erred in sustaining Salisbury's demurrer to the complaint. 2. That judgment was wrongly given in favor of both defendants, Piatt not having appeared or pleaded.

By section 3961 of the Revised Statutes of the United States it is provided that "no extra allowance shall be made for any increase of expedition in carrying the mail unless thereby the employment of additional *stock and carriers* is made necessary, and in such case the additional compensation shall bear no greater proportion to the additional stock and carriers necessarily employed than the compensation in the original contract bears to the stock and carriers necessarily employed in its execution."

It is contended that as the statement of the contractor in every case merely stated the number of *men and horses* required to perform the service on the contract time, and also

how many men and horses, in his opinion, it would require to perform the service on the proposed expedited schedule, and as it merely alleged that the subcontractor or person who performed the service did not use the men and horses stated to be necessary, the complaint is insufficient to maintain this action, for the reason that section 3961 of the Revised Statutes, under which the action is brought, provides nothing as to men and horses, but does provide that the allowance for expedition shall be based upon the additional *stock and carriers* made necessary by the expedited schedule. And, it is said, " there is not a word in the complaint that charges that the defendants did not employ additional stock and carriers on the expedited schedule in exact proportion to the expedition allowance." It is also said that the words "stock and carriers" in section 3961 are not synonymous with the words "men and horses;" that the word "stock" does not mean simply live stock, nor does the word "carriers" mean either horses or men, but rather includes all the equipment of the route, whether horses, wagons, harness, stage stations, fuel, food, stables, in fact everything needed to carry on the service, such being the popular sense in which these words are used.

There is nothing of substance in these contentions. Whatever may be comprehended by the term "stock and carriers" in section 3961, it certainly includes within it "men and horses;" and as the Postmaster General could allow an increased compensation only in conformity with that statute, it must be assumed that he did so upon the basis of the sworn statement alleging an increase of "men and horses" necessary for the performance of the expedited schedule. The defendants in error are bound by this sworn statement, and as the increased compensation was ordered only upon the assumption of the truth of its allegations and in conformity with the statute, and as they agreed to the amendment of the original contract in this regard, they are estopped from asserting that this sworn statement was not intended to bring the contract within the statute.

If the term "stock and carriers" does not include "men and

horses," then the Postmaster General had no right to make
the increased allowance mentioned, and if this be true, such
additional allowances exceeded the "sum which, according to
law, might rightfully have been allowed therefor," and by the
provisions of section 4057 of the Revised Statutes the Post-
master General "shall cause suit to be brought to recover such
wrong   .   .   .   payment, or excess, with interest thereon."
But, as by the provisions of section 3961, " no extra allowance
shall be made for any increase of expedition in carrying the
mail unless thereby the employmer' of additional stock and
carriers is made necessary," and as the Postmaster General,
upon the defendant Piatt's sworn statement that certain
increases of men and horses were necessary to perform the
service upon the proposed expedited schedule, made the said
allowance of increased compensation, the conclusion must be
that the plaintiff made and the defendants accepted the
amended contract, with the understanding that it was within
the provisions of the statute.

The defendants in error further contend that the increased
allowances in question were not made by the Postmaster Gen-
eral solely upon the basis of the sworn statement designating
the additional number of men and horses necessary to perform
the service upon the proposed expedited schedule, but that it
was merely for the information of the Postmaster General in
making the new schedules.  But whether it be true or not
that he acted solely upon such representations, it is sufficient
that they constituted a substantial part of the information
from which he made the new schedules allowing increased
compensation.  The complaint, however, alleges that the
Postmaster General did allow the increased compensation
solely upon the basis of these false representations.  The
allegations of the complaint must be taken to be true for the
purposes of this demurrer.  The question is whether the facts
as stated, if true, constitute a sufficient cause of action.  We
think they do.

The third count alleges that the excessive payments in
question were made by the plaintiff in *mistake of fact*.  We
do not doubt the plaintiff's right to recover the amount of

such excessive payments in case of fraud in the transaction leading to their disbursement. But if there were no actual fraud in these proceedings, it is clear from the allegations of the complaint that the defendants received the moneys in question without consideration, for, whatever may be the meaning of the term "stock and carriers," the original contract itself and the sworn statement on the basis of which it was amended mention only "men and horses" as the means of performing the service of carrying the mail, and it is shown by the allegations of the complaint that to perform the expedited schedule either three times per week or seven times per week there were never required nor used "more than 34 men and 100 horses, being 14 men and 100 horses less than the said Piatt alleged in his said sworn statement were necessary for performing said expedited service three times per week." The provisions of section 4057 of the Revised Statutes are applicable to this very state of case. That section provides that "in all cases where money has been paid out of the funds of the Post Office Department under the pretence that service has been performed therefor, when, in fact, such service has not been performed, or as additional allowance for increased service actually rendered, when the additional allowance exceeds the sum which, according to law, might rightfully have been allowed therefor, and in all other cases where money of the department has been paid to any person in consequence of fraudulent representations, or by the mistake, collusion, or misconduct of any officer or other employé in the postal service, the Postmaster General shall cause suit to be brought to recover such wrong or fraudulent payment or excess, with interest thereon."

We are of opinion that the court below erred in sustaining the demurrer to the third count.

Very little need be said upon the question of misjoinder, constituting the second ground of demurrer.

Section 3963 of the Revised Statutes provides that "no contractor for transporting the mail within or between the United States and any foreign country shall assign or transfer his contract, and all such assignments or transfers shall be

null and void." If the alleged subletting of the contract to Salisbury be regarded merely as an arrangement between the defendants, still Piatt was liable for the performance of both the original and the amended contract, during the whole period of service. The claim of the plaintiff is confined to the period between December 16, 1878, and August 21, 1882, during which time the expedited schedule was in force. So there is nothing in the contention of improper joinder in reference to matters previous to December 13, 1878. As to matters subsequent thereto, the joinder was proper, for both defendants were parties to the fraudulent transaction whereby the plaintiff was induced to make the increased allowance of compensation referred to; and it is specifically alleged in the third count of the complaint that the sworn statement of Piatt was presented "by and on behalf of both the said defendants, Piatt and Salisbury, to the Postmaster General." The complaint further alleges that by means of these false representations and "by means of false and fraudulent vouchers presented to the said Post Office Department of the United States, the said defendants, George H. Piatt and Monroe Salisbury, were paid by and received from this plaintiff a larger sum of money than they were entitled to receive." It thus appears that each of the defendants participated in this transaction, and it was proper to sue them as jointly and severally liable.

There is but one cause of action, and that for the excessive payments made between December 16, 1878, and August 21, 1882. Piatt was contractor during this period, and the service was performed for him by Salisbury, to whom was paid the compensation agreed upon in the amended contract. The single cause of action then is for the recovery of such amount as was in excess of the sum allowed by law. Piatt and Salisbury according to the facts admitted by the demurrer, are equally concerned in the fraud perpetrated upon the government, one by presenting in behalf of both a sworn statement containing false and fraudulent allegations whereby the Postmaster General was induced to amend the original contract, allowing increased compensation, the other by present-

ing for payment false and fraudulent vouchers comporting therewith, upon the faith of which the money was paid. They are then jointly and severally bound to refund the sum so paid and received in violation of section 3961 of the Revised Statutes.

Assuming, as we must, on this hearing, the truth of the facts set forth in the complaint, we are of opinion that the demurrer should have been overruled.

As Piatt was not in the court below, it was error to have sustained the demurrer and dismissed the action as to him.

The judgment is reversed and the cause remanded for further proceedings in conformity to this opinion.

*Reversed.*