## F. A. BLANCK v. STATE.

No. A-2668. Opinion Filed January 26, 1918.

Rehearing Denied March 13, 1918.

(169 Pac. 1130.)

1. **APPEAL AND ERROR—Review—Brief and Argument.** Only such alleged errors will be considered by this court as are supported in the brief of counsel for plaintiff in error by argument and the citation of authority. It is not sufficient for counsel merely to assert that error has been committed. The crowded condition of this docket precludes the court from searching the record for error or the books for authorities in support thereof.

2. **CONSPIRACY—Concert—Evidence.** The least degree of concert of action or collusion makes the act of one conspirator the act of all, and each conspirator is liable for the act of each other conspirator done in pursuance of such conspiracy. Evidence examined, and **held** sufficient to support the theory that a conspiracy existed between appellant and one W. to unlawfully secure the signature of one T. C. to a check for the payment of money.

3. **TRIAL—Admission of Testimony of Conspirator—Question for Jury.** Where the court permits a witness to testify relative to a

transaction between himself and one W., an alleged coconspirator, subsequent to the commission of the offense for which defendant was being tried, and there is testimony to the effect that the defendant was present at the time this conversation took place, such testimony was sufficient to authorize the trial court to admit the evidence, although defendant denied he was present on said occasion. Disputed questions of fact are to be determined by the jury under proper instructions by the court.

4. **APPEAL AND ERROR—Harmless Error—Admission or Exclusion of Evidence.** The admission or exclusion of testimony which, in the light of subsequent developments during the trial, indicates conclusively that no injury did or could have resulted is not ground for reversal of a judgment.

5. **FALSE PRETENSES—Sufficiency of Information.** Information examined, and held sufficient to allege the crime of false pretenses with sufficient definiteness and clearness.

*Appeal from District Court, Adair County;*
*John H. Pitchford, Judge.*

F. A. Blanck was convicted of false pretenses, and sentenced to imprisonment in the state penitentiary for a term of two years, and he appeals. Judgment affirmed.

*W. L. Curtis* and *E. B. Arnold,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. The plaintiff in error was convicted in the district court of Adair county of the crime of false pretenses, based upon substantially the following facts:

T. E. Wyly and this plaintiff in error were each engaged in the real estate business in the city of Stilwell, having their respective offices in adjoining buildings with a stairway common to both buildings ascending between the two. They were not partners, but frequently engaged in business deals together, dividing the profits.

Joanna Charles and Thompson Charles, being respectively the widow and father of John Charles, deceased,

were the sole heirs to his allotment as a member of the Cherokee Tribe of Indians. Joanna and Thompson were each full-blood Cherokees, and in order to obtain a sale of these inherited lands, it was necessary to obtain the approval of the county court of Adair county, in which county the said John Charles lived and died.

It appears that T. E. Wyly obtained information that John Charles was dead, and that Joanna and Thompson. Charles were his sole heirs. With this information in hand, he undertook to procure the approval of the county court of Adair county to a sale of said lands, and agreed with the heirs to purchase the property for the sum of $800, attorney's fees and court costs. He employed an attorney for this purpose and had started the proceedings about the time that this plaintiff in error, F. A. Blanck, learned of John Charles' death and of the proposed sale of his lands. Blanck immediately approached Wyly about this matter, and Wyly agreed that, if he would give him the sum of $90, which equaled $1 per acre, and pay all the court costs and attorney's fees occasioned by the sale, he would relinquish any bid he intended to make on the land and let Blanck buy it. Blanck represented at that time that he had a purchaser for the land, and it appears that Blanck was making a deal for one Green, who lived at Wann in Washington county, near where the land was located. Green appeared to be representing one J. W. Reese of that locality, who was to be the actual purchaser of the land. It appears that Reese was willing to give $18 an acre, or a total of $1,620, in full payment for the 90 acres of land.

It was the purpose of Blanck to buy this land in for $800, the price that the heirs had agreed to take if he

could obtain the approval of the county court, to pay Wyly $90, and to pay all attorney's fees and court costs, and to keep for himself, for putting through the deal, the balance that would be left out of $1,620, which he intended to obtain from Reese. However, this arrangement fell through. On the date that the land was advertised for sale, Reese attempted to get into communication with Blanck by long-distance telephone, but was unable to make the connection. He thereupon called upon the judge of the county court of Adair county, and asked him if it would be too late to put in a bid on this land, this being the day same was set for sale. The county judge informed him that it would not, and he thereupon informed the county judge that he desired to bid $1,620 for the land, and that he would wire the money immediately to the First National Bank of Stilwell to the credit of the county judge, to be checked upon if he was the successful bidder in the sale.

Before the hour set for the sale, it appears that the plaintiff in error learned of the fact that Reese had wired this money to the county judge, and had placed a bid upon the land. This, of course, necessitated his making other arrangements with Wyly, and he immediately notified Wyly that the deal had fallen through, that Reese had "pulled a bonehead" by interposing, without his knowledge, the full amount that was intended should be paid for the land by notifying the county judge to that effect. Wyly, however, was not to be denied, nor was he discouraged, by the collapse of Blanck's arrangements. He told Blanck that he believed, notwithstanding the fact that his deal had fallen through, that he could get the heirs to pay a commission if Blanck would agree to let him use Reese's

bid for that purpose. This Blanck agreed to do, and, according to the state's case, Wyly by representing to the heirs that the sale could not be completed unless the heirs each paid him a commission of $300 for the sale; that the sale would be stopped and they would get no money. By this means, he procured a check from each of them for $300, payable to himself, drawn on the First National Bank of Stilwell. This was all done prior to the hour of the sale, but on the date of the sale, and without the knowledge of the county judge or the probate attorney of that district. The sale was subsequently approved, and the land sold to Reese for the bid of $1,620, which was apparently a fair value for the land, but not the total appraised value thereof, which included some $225 of value for oil and gas purposes. However, the county judge approved the sale for this amount, and the probate attorney, after investigation, agreed that the sale ought to be confirmed.

Wyly and Blanck placed these $300 checks in possession of the First National Bank of Stilwell, and as soon as the heirs brought in their checks of $810 each, being half of the price paid for the land, to said bank, they obtained the payment of the $300 checks, and Wyly and Blanck divided the money $300 each.

Separate trials were had, and Wyly had been convicted some time prior to this trial in which Blanck was convicted. Numerous assignments of error are set forth in the brief of counsel for plaintiff in error, but we deem it unnecessary to discuss at length each and every of these assignments.

Some of said assignments are supported by neither argument nor authority. Counsel for plaintiff in error

assert error, but fail to put their finger on the place that hurts, or show that the plaintiff in error was injured by what is alleged to be error. This court has repeatedly held that briefs of counsel for plaintiff in error must not only assert that error was committed, but must specifically point out the error and support same by argument and authority. The crowded condition of this docket precludes the court from searching the record for error, or the books for authorities in support thereof.

Among other things, it is urgently argued that the evidence is insufficient to support the conviction. While the evidence of the existence of a conspiracy between T. E. Wyly and the plaintiff in error, F. A. Blanck, to defraud Joanna and Thompson Charles is not as explicit and as conclusive as in some cases heretofore before this court, yet we deem same sufficient. The plaintiff in error admits that he agreed with Wyly that they should endeavor to get a commission out of these Indians for the sale of the land, and this was done after they both knew that the bid of J. W. Reese of $1,620 for said land was in the possession of the court. Their effort to secure a commission was wrongful, and a charge unauthorized by law, as they both well knew, and the fact that Blanck agreed that Wyly should secure said commission with the knowledge that the same was wrongful and unsupported in law as against these full-blood Indians, and his subsequent participation in the proceeds of such an act, were, in the opinion of this court, an authorization for Wyly to procure said checks in the manner in which he did, and showed clearly a collusion between the two sufficient to sustain and support the theory that a conspiracy existed. Blanck knew that Wyly could not, except by false and fraudu-

lent representations, obtain a commission from said Indians. The entire scheme was conceived in iniquity. This court has repeatedly held that the least degree of concert of action or collusion makes the act of one conspirator the act of all, and each conspirator is liable for the act of each other conspirator done in pursuance of such conspiracy. *Holmes v. State*, 6 Okla. Cr. 542, 119 Pac. 430, 120 Pac. 300; *Ex parte Hayes*, 6 Okla. Cr. 321, 118 Pac. 609; *Wishard v. State*, 5 Okla. Cr. 611, 115 Pac. 796; *Burns v. State*, 8 Okla. Cr. 554, 129 Pac. 657; *Stockton v. State*, 5 Okla. Cr. 310, 114 Pac. 626; 2 Rice on Evidence, 866, sec. 333; 1 Greenleaf on Evidence (13th Ed.) sec. 111; *Starr v. State*, 5 Okla. Cr. 460, 115 Pac. 356.

It is also contended that the court erred in permitting Joanna Charles and Thompson Charles to testify in detail to statements made to them by T. E. Wyly, it having been first shown that each was a full-blood Cherokee Indian and spoke only the Cherokee language, and that the conversation with the said Wyly was through an interpreter at the time of the execution of the checks, when it is claimed that the false pretenses were made upon which this conviction is based, without showing that the interpreter was dead or absent from the county.

We deem this assignment without merit. In the case of *Terrapin v. Barker*, 26 Okla. 93, 109 Pac. 931, the Supreme Court of this state, where the same question was raised, held:

"When two persons, speaking a different language, neither of whom is able to understand the language of the other, voluntarily use a third person, who uses the language of both to interpret between them their conversations relative to a business transaction, the interpreter is to be regarded as the agent of each to translate and com-

municate what he says to the other, and admissions or statements made by one to the other through the interpreter are not hearsay, and the party to whom they are made may testify to them."

Said opinion is fully supported by argument and numerous authorities, and the rule there adopted as to civil cases is equally applicable in criminal.

It is also contended that the court erred in permitting the witness Thompson Charles to testify relative to a transaction which is alleged to have occurred between him and T. E. Wyly subsequent to the preliminary trial in this case without first showing that the defendant, F. A. Blanck, was in some way connected with, or responsible for, said conversation, or was present at the time it was made. It is admitted that, concerning the transaction referred to, Thompson Charles, one of the prosecuting witnesses, was brought to T. E. Wyly's office from his home in the country in the conveyance that belonged to F. A. Blanck, and the record shows that the witness Thompson Charles on cross-examination testified that F. A. Blanck was present in Wyly's office on the occasion that the transaction complained about took place. This testimony was sufficient to authorize the court to admit the evidence. Blanck denied he was present on said occasion, and other witnesses said they did not remember whether he was present or not. It was solely a question of fact for the jury to determine whether or not he was present.

It is also contended that the court erred in refusing to permit the counsel for plaintiff in error to cross-examine the state's witness, T. E. Wyly, with reference to whether or not there was any agreement or common un-

derstanding between said witness and the plaintiff in error on the day of the sale or prior thereto, to secure the execution of the check upon which this prosecution is based, by false or fraudulent representations to the prosecuting witness, Thompson Charles. We are of the opinion that the court's ruling in this respect was erroneous, but whatever error was committed was cured by plaintiff in error's own act in placing said T. E. Wyly upon the witness stand in his own behalf; said Wyly testifying fully and favorably to the plaintiff in error in respect to said matter. In *Rogers v. State,* 9 Okla. Cr. 277, 131 Pac. 941, this court held:

"The admission or exclusion of testimony which, in the light of subsequent developments during the trial, indicates conclusively that no injury did or could have resulted is not ground for reversal of a judgment."

It is also contended that the information in this case is insufficient. We have carefully examined same, and have reached the conclusion that all averments necessary to make out the crime of false pretenses are contained therein with sufficient definiteness and clearness to indicate to the defendant the crime with which he was charged. There was an alleged false representation by the defendant of an existing fact, with knowledge of its falsity, and alleged reliance thereon by the person defrauded, by means of which it is alleged that the signature to the check, setting out the same, was obtained. This was sufficient under the statutes.

It is also contended that the court erred in refusing to give certain requested instructions, and in giving certain instructions on his own motion. After a thorough examination of the instructions requested, and those given,

we are of the opinion that the court fully covered the law in this case in the instructions given, and that the same were as favorable to the defendant as his testimony would warrant.

We find no substantial error in this record. The judgment is therefore accordingly affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.