## JOHN Q. ADAMS v. STATE.

No. A-3711.   Opinion Filed Jan. 27, 1922.
Rehearing Denied Sept. 23, 1922.
(209 Pac. 189.)

(Syllabus.)

1. **Indictment and Information—Unnecessary for Information to Allege Preliminary Examination or Waiver—Presumption in Absence of Demurrer or Plea in Abatement.** The fact that there has been a preliminary examination or a waiver thereof need not be stated or averred in the information, or shown affirmatively by the prosecution. That the defendant did not have a preliminary examination is a fact to be established on a plea in abatement or on a motion to quash; otherwise all essential preliminary proceedings will be presumed.

2. **Indictment and Information—Judgment Sustaining Demurrer of One Defendant not Inuring to Benefit of Codefendant.** Where there is nothing in the record to disclose a contrary intent, where one of several persons jointly charged with an offense demurs to the information on the ground of the insufficiency of the facts as alleged in the information, a judgment sustaining such demurrer will inure to the benefit of the demurrant only, and, under the circumstances here, such judgment will not inure to the benefit of those who later voluntarily appear and plead to the information.

3. **Constitutional Law—Indictment and Information—Dismissal as Judicial Function not Delegable to County Attorney.** "The court may, either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes." Rev. Laws 1910, § 6099. Mere permission to file an amended information is not sufficient. This is a judicial function, made so by statute, that cannot be delegated to the county attorney.

4. **Evidence—Testimony Elucidating System by Which Coconspirators Defraud.** Where coconspirators pursue a well-defined system and method of defrauding certain classes of individuals, any testimony elucidating that system is competent, whether the occurrence or declaration testified to was previous or subsequent to the act complained of in the information, so long as it was done in pursuance of the common fraudulent design.

5. **Judgment and Sentence—Waiver of Statutory Right to Two Days Between Verdict and Judgment.** A defendant may waive his statutory right of insisting that at least two days shall elapse between the rendering of a verdict and the rendition of judgment.

6 Trial—Refusing Instructions Covered by Instruction Given.— Instructions relating to the testimony of accomplices examined, and held sufficient.

Appeal from District Court, Marshall County; Geo. S. Marsh, Judge.

John Q. Adams was convicted of forgery in the first degree, and sentenced to serve ten years in the state penitentiary, and he appeals. Affirmed.

R. C. Roland, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. John Q. Adams, plaintiff in error, referred to in this opinion as the defendant, was by information filed in the district court of Marshall county, November 19, 1918, charged with knowingly, fraudulently, and feloniously making and forging a certain described deed to real estate. At the trial, on September 10, 1919, the jury rendered a verdict finding the defendant guilty, and assessing his punishment at confinement in the state penitentiary for a period of 10 years.

D. F. Underwood and Sam Jackson were charged jointly with this defendant for this crime, and on May 23, 1919, D. F. Underwood, by his attorney, demurred to the information filed on the grounds that it did not state facts sufficient to constitute the crime of forgery; that said information did not charge that the property described therein was the subject of forgery; that said information failed to charge whom the defendants are charged with attempting to defraud. This demurrer was by the court sustained, and an order made permitting the county attorney to file an amended information, but no amended information was filed pursuant to said order. The record further discloses that on the 9th day of

September, 1919, the defendant John Q. Adams filed a separate demurrer to the information, which was by the court overruled, and that the defendants, upon their motion, were then granted a severance. Thereupon this defendant announced ready for trial and the trial proceeded, with the result before stated.

The facts in this case disclose that John Q. Adams and D. F. Underwood had an agreement and understanding with Sam Jackson that the latter should impersonate an Indian allottee, by the name of Jimmie Thomas, and other Indian allottees, and should falsely and fraudulently execute forged and spurious deeds, purporting to be executed by Jimmie Thomas and other Indian allottees, to portions of their allotted lands, without the knowledge or consent of the allottees; that pursuant to this conspiracy and fraudulent agreement and understanding Sam Jackson executed a deed to a portion of the land belonging to Jimmie Thomas, and signed the name of Jimmie Thomas to this purported conveyance, and by fraud and deception, and as a part of the conspiracy, acknowledged this purported conveyance before a notary public; that these defendants received the purchase price named in the deed for the execution of this spurious deed and divided it among themselves.

The assignments of error urged by the defendant in his brief may be summarized as follows:

(1) That the record does not disclose that there was any preliminary hearing, and that the district court was therefore without jurisdiction.

(2) That the amendment to the record shows that a demurrer to the information was filed on behalf of D. F. Underwood, a codefendant, and that the demurrer as to Underwood was sustained and that the county attorney failed to file an amended information.

(3) Error of the court in permitting the witness Sam Jackson to testify to conversations had with his coconspirator, Underwood, in the absence of this defendant.

(4) Error of the court in permitting the state to show a series of acts and transactions by these conspirators before and after the execution of the spurious deed here at issue.

(5) That the testimony of Sam Jackson, an accomplice, was not corroborated by independent testimony.

(6) That the verdict was rendered on September 10, 1919, a motion for a new trial was filed and overruled, and judgment rendered on September 11th, and that the rendition of judgment was therefore premature.

(7) Error of the court in refusing to give instructions numbered 1, 2, and 3, requested by the defendant.

The Constitution of this state provides that no person shall be prosecuted for a felony by information without having first had a preliminary examination before an examining magistrate, or having waived such preliminary examination. The defendant does not claim that no preliminary examination was had, but now makes the objection for the first time that the record does not show that a preliminary hearing was had or waived. If the defendant did not have a preliminary examination it would be necessary for him to make some showing to that effect; the mere fact that such examination does not appear of record is not sufficient. In criminal cases prosecuted upon information in courts of record there is a presumption that the court had jurisdiction, and that the defendant had or waived a preliminary hearing. In the case of Williams v. State, 6 Okla. Cr. 373, 118 Pac. 1006, the third syllabus is as follows:

"The fact that there has been a preliminary examination or a waiver thereof need not be stated or averred in the in-

formation, or shown affirmatively by the prosecution. That the defendant did not have a preliminary examination is a fact to be established on a plea in abatement or on a motion to quash; otherwise all essential preliminary proceedings will be presumed.''

To the same effect, see Robbins v. State, 12 Okla. Cr. 294, 155 Pac. 491.

. The defendant made no objection in the trial court to the effect that no preliminary hearing had been had or waived, and he cannot here, for the first time, urge such objection. In the case of McDaniel v. State, 8 Okla. Cr. at page 220, 127 Pac. 358, it was held that a defendant has a right to insist upon such an examination before being called upon to plead, but this right may be waived when called upon to plead, as well as when called before a magistrate for examination. This is not a matter which goes to the merits of the trial, but only to the regularity of previous proceedings. Doubtless there was a preliminary examination; otherwise the objection would have been urged in the trial court.

It is next urged that, because the court sustained a demurrer attacking the sufficiency of the information, filed on behalf of the codefendant Underwood, such ruling of the court amounted to a judgment of the court that the information was insufficient as to the other codefendants.

A demurrer urged by one of several parties may be passed upon without affecting the rights of the others. 31 Cyc. 349; U. S. v. Piatt, 157 U. S. 113, 15 Sup. Ct. 498, 39 L. Ed. 639; Dyal v. Hays (Ark.) 12 S. W. 874; Farwell v. Jackson, 28 Cal. 105; Freeland v. Jasper Co., 27 Ill. 303; National Ins. Co. v. Bowman, 60 Mo. 252. Ordinarily, where one of several parties demurs to an information on the ground of the insufficiency of the information, and the exceptions urged might apply to all of the defendants alike, a judgment on the de-

murrer should apply only to the defendant who files it; but there are decisions to the contrary, holding that the sustaining of a demurrer attacking the sufficiency of an information may inure to the benefit of the codefendants who did not demur. 39 Cent. Dig. 1867; Tate v. Goode (Ga.) 33 L. R. A. (N. S.) 310, notes and annotations.

In this case it is difficult to glean from the record the meaning and effect of the order made in sustaining the demurrer of defendant Underwood. The grounds for demurrer urged by Underwood were that the information does not state facts sufficient to constitute the crime of forgery; that the information does not disclose that the property described therein was the subject of forgery; and that the information fails to charge whom the defendants attempted to defraud. From an amendment to the record it appears that on January 23, 1919, the court made an order, upon presentation and hearing of the demurrer of Underwood, and did "sustain said demurrer and quash the information on file in said cause and granted the county attorney permission to file an amended information within ten days thereafter." It further appears that no amended information was filed. Thereafter, on the 9th day of September, 1919, defendant John Q. Adams filed a demurrer to the information on the ground that the same did not state facts sufficient to constitute the crime charged. This demurrer on the part of the defendant Adams was on the same day heard and overruled; a severance was ordered and the defendant Adams announced ready for trial.

Section 6099, R. L. 1910, is as follows:

"The court may, either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed, but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes."

Section 5799, R. L. 1910, provides that, when the objection that the facts stated do not constitute a public offense appears upon the face of the information, objection may be taken by demurrer, or, at the trial, under a plea of not guilty, and in arrest of judgment. Section 5795, R. L. 1910, provides that if the demurrer is sustained the judgment is final upon the information demurred to, unless the court directs a new information to be filed. The court cannot delegate this authority to the county attorney, leaving it to his discretion to file or not to file an amended information. Ex parte Williams, 116 Cal. 512, 48 Pac. 499. Section 5796 provides that, if the court does not direct the defendant to be further prosecuted, he must be discharged. There is no wide difference between civil and criminal pleading. Bishop's New Crim. Law, § 320.

Where several persons join in the commission of an offense the action is joint or several, and, whether prosecuted jointly or severally, each defendant must plead for himself. Bliss on Code Pleading (3d Ed.) 414, 418, et seq.

While a demurrer, strictly speaking, is not a plea, it is an objection to a plea and the rules of pleading apply.

We do not understand why the demurrer was sustained as to Underwood and overruled as to this defendant, unless it was because there were three grounds urged in the demurrer interposed by Underwood and only one of those grounds was urged in the separate demurrer filed by Adams. From the recitals in this record, considered together with the subsequent conduct of this defendant in filing a separate demurrer and the conduct of the court in entertaining, hearing, and ruling on the demurrer, it would seem that the parties interested were of the opinion that the demurrer sustained as to Underwood did not affect the prosecution of the codefendant Adams. We therefore hold, under the circumstances here, that the voluntary appearance of Adams by filing

his separate demurrer to the information, and after an adverse adjudication thereon, voluntarily appearing and entering his plea of not guilty, and announcing ready for trial, gave the court jurisdiction to try the offense as to him, and that the judgment afterwards rendered on the verdict was not void because of the sustaining of the demurrer as to the defendant Underwood.

It is next contended that the court erred in permitting the witness Sam Jackson to testify to conversations he had with Underwood in the absence of this defendant. These conversations related, for the most part, to the agreement and understanding had among the three defendants indicative of a conspiracy by which they were to co-operate in uttering forged and spurious deeds. The testimony as a whole amply supports this theory, and it therefore follows that any act or declaration of one coconspirator may be introduced against the other conspirators when done or made pursuant to their common design. In the case of Mathews v. State, 19 Okla. Cr. 153, 198 Pac. 112, the eleventh syllabus is as follows:

"It is immaterial in what order testimony predicated upon a conspiracy is introduced, if the series of facts and circumstances shown in evidence ultimately makes a prima facie case of conspiracy. A conspiracy may, and generally must, be proved by a number of independent acts, conditions, and circumstances tending to show an unlawful common purpose of the conspirators."

The conspiracy here involved did not relate alone to the forgery of the deed here at issue; it contemplated the forgery of other deeds, with the manifest purpose and intent to cheat and defraud various Indian allottees out of their lands. The responsibility of coconspirators for the declarations and conduct of others acting with them is not confined to the accomplishment of the common purpose for which the conspiracy was entered into, but extends to and includes all declarations

made and collateral acts done incident to and growing out of the common design. Burns v. State, 8 Okla. Cr. 554, 129 Pac. 657.

In the case of Blanck v. State, 14 Okla. Cr. 339, 169 Pac. 1130, with reference to a conspiracy, the court said:

"The entire scheme was conceived in iniquity. This court has repeatedly held that the least degree of concert of action or collusion makes the act of one conspirator the act of all, and each conspirator is liable for the act of each other conspirator done in pursuance of such conspiracy"—citing many authorities.

It therefore follows that, where the conspirators pursued a well-defined system and method of defrauding certain classes of individuals, any testimony elucidating that system would be competent, whether the occurrence or declaration testified to was previous to or subsequent to the act complained of in the information, so long as it was done in pursuance of the common fraudulent design.

It is next urged that the defendant was entitled to at least two days after the return of the verdict before the court should pronounce judgment against him. This is another right that may be waived. The defendant interposed no objection to the rendition of judgment upon that ground at the time. He did interpose an objection to sentence being pronounced upon the verdict, but it appears that this was an objection to the judgment itself, and not an objection and exception to the fact that it was rendered too soon. Kerkendall v. State, 5 Okla. Cr. 570, 115 Pac. 612; Howard v. State, 2 Okla. Cr. 200, 101 Pac. 131; McCord v. State, 2 Okla. Cr. 209, 101 Pac. 135.

Finally, it is urged that the court erred in refusing to give instructions numbered 2 and 3, requested by the defendant, touching upon the weight and effect of the testimony of

an accomplice. The matters complained of were fully covered by instruction No. 5, given by the court, as follows:

"You are instructed that the witness Sam Jackson is an accomplice of the defendant, J. Q. Adams, as that term is hereinafter used, and that a conviction cannot be had in this case upon the testimony of an accomplice unless it be corroborated by such other evidence as tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

This instruction correctly states the law applicable to the testimony, and there was no error in refusing to give the instructions requested by the defendant.

The judgment of the trial court is affirmed.

DOYLE, P. J., concurs.

MATSON, J., not participating.