# BILL BROWN v. STATE.

No. A-5971.   Opinion Filed Feb. 2, 1929.
(273 Pac. 1018.)

12

Sandlin & Winans, for plaintiff in error.

George Short, Atty. Gen., and Leverett Edwards, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, for convenience referred to as the defendant was convicted in the district court of Jefferson county, on a change of venue from Stephens county, of the crime of rape in the first degree, and his punishment assessed at imprisonment in the state penitentiary for a term of 20 years. Upon this appeal from the judgment rendered in pursuance of the verdict, various errors are assigned, among which is the overruling of appellant's motion to have the case set for trial September, 1925, term of court.   This question was thoroughly considered by this court in the case of Sledge v. State, 40 Okla. Cr. 421, 269 P. 385, a companion case, and decided adversely to the defendant's contention.   Following the opinion in the Sledge Case, we hold that the contention is without merit.   It is not contended by the

state that this defendant, Bill Brown, actually committed rape on the person of the prosecuting witness, Ethel Srey-was, but that he aided, abetted, encouraged, and knowingly permitted Harry Sledge to commit rape upon the said prosecuting witness.

The following brief statement of the facts, which are gathered from the evidence, will answer our consideration of the remaining assignments: Lillie Sreywas, a witness for the state, testified in substance:

That she was 20 years of age, and had lived in the city of Duncan, Okla. for about 4 years, was working for Dr. McGregor, and had worked for him about 3 years. That on the 21st day of February, 1925, she lived with her two sisters, Ethel and Odie. That Ethel and Odie were 18 and 15 years of age, respectively. That on the 21st day of February, 1925, she saw the defendant, with Harry Sledge and Ted Elliott, driving west in a Ford coupe on Main street of Duncan. That Elliott waved at her and her sisters. That defendant and the boys with him parked the car on Main street near the Ruth Hospital. That she and her sisters went up to the car. She did not know any of the boys, except Elliott. That she and her sisters were asked by the boys to go riding. That Harry Sledge was introduced to her and her sister. That defendant was introduced as Bill Smith. That she and her sisters did not go riding with the boys at the time, as they had to do some shopping.

That it was about sundown. That, after shopping in town, she and her sisters went home, and in about 30 minutes defendant and the other boys came to her home. The boys did not come in the house, as the girls had only one room, and the old lady with whom they roomed did not let them have company. She did not go riding with the boys, because they were strangers to her, but that her sister Ethel went. That Elliott and Sledge came to the

porch and talked, but defendant remained in the coupe about five feet distant from the porch. She remained at home, and the others went to Harry Sledge's house. She did not see any of the parties after they left in the coupe until Elliott came back alone, and asked her to go with him. She did not go with him, and he left, going toward town. After Elliott left she dressed and went to the Sledge farm north of Duncan to look for her sister. That Charles Beckindorf and Odie went with her. When she arrived at the Sledge farm, she saw Harry Sledge and defendant and the car in which Ethel had left home. Sledge and defendant came to the car in which witness was seated. She asked where her sister Ethel was, and that Sledge replied, "You have no sister here." That Ethel had left with Elliott. In about one hour after she left the Sledge farm her sister was brought home in the car in which she had left. Bill Brown, Ted Elliott, and Bill Morrison and Ethel were in the car when it arrived at her home. Ethel could not walk, and her throat had finger marks and scratches, and there were bruises on the back of her head, and one of her teeth was broken. Witness called Drs. Long, Bartley, and McGregor to see her sister.

Ethel Sreywas, as a witness for the state, testified in substance; She was 18 years of age last November. She met defendant February 21st on Main street of Duncan in company with Harry Sledge and Ted Elliott. She had never met any of the boys prior to that time, except Elliott. She was living with her two sisters on North Seventh street in Duncan. She had been doing housework for a living for 2 years. She and her sisters met the boys about 7:30 Saturday afternoon. That Ted Elliott raised his hand and spoke to them. The boys parked the car in which they were riding. The girls and boys talked for a while, when Harry Sledge was introduced, and the defendant was introduced as Bill Smith. The boys asked the girls to go riding, but the girls could not go, as they had some shopping

to do. The boys came to the house on North Seventh street. That it was raining that evening. Defendant took no part in the conversation at the house, but remained in the car. Witness went with the boys in the car to get Bill Morrison, another young lady who was staying about six blocks away with a Mrs. Ford. They were in a Ford coupe and witness sat in Elliott's lap. When the Morrison girl joined the party, defendant was introduced as Bill Smith. Miss Morrison got in the coupe and went with the party to get another girl whose name was Fern. Harry Sledge got out at Fern's house, but came back and got in the car. Defendant drove the car to Fern's house, and the Morrison girl sat in Harry Sledge's lap. When Sledge got back in the car, he took the wheel and drove the car down Ninth street to Spruce in the north part of town.

Sledge got out at Spruce for about 15 minutes to get whisky, but that he did not get any. Sledge got back in the car, and drove to Eighth street, and stopped again, and got out, and was gone several minutes, when he came back and got in the car, and promised to take the girls home. Sledge drove the car north on Eighth street instead of taking them home. Sledge drove the car out to the Sledge farm, which is about a half mile northeast of the city limits. When they arrived at the Sledge farm, Harry Sledge and Ted Elliott got out and went in the house, and were gone about five minutes, when Elliott called Bill Brown and told him to get out and come in and bring his girl. That all the parties went in the house. The house has a front porch, and faces west. Witness was in a room with Ted Elliott and defendant for a few minutes when she heard Bill Morrison scream, and witness asked Elliott to go in and help the Morrison girl, and asked defendant to take witness home. Defendant was not in the room where the screaming was, and had nothing to do with it. Defendant told witness that if she went in there she would get her head knocked off. The screaming was in the front

room. Defendant then got up and started out and said he would take witness home. At that time witness and defendant were in the middle room, and the other parties were in the front room. There was a gas light in the middle room, but no light in the front part of the house. There were three cots in the middle room. Witness attempted to follow him, but Harry Sledge shoved her back. Defendant went into the front room. Harry Sledge shoved witness back on the floor. Sledge knocked her down and said, "People think I am so mean and bad, I will just carry out what they think." Witness told Sledge that she had done nothing to him, and asked him to take her home. About that time she heard a car drive away, and Sledge turned off the light, and said that he did not want any one from the rig to see witness and Sledge together, and further told witness that all the parties had gone, and that witness was at his mercy. "He just grabbed me around the waist and threw me on the cot; said, 'Come over here and love me,' and I said I would not do it, and he said he would show me. I cried and bit him on the hand and cheek, and commenced screaming; just as soon as he threw me on the cot. I think I struggled with him about 30 minutes. I screamed every time he turned my throat loose; I screamed about six times. He was choking and biting me in the face. He hit me with his fist and cussed something awful. I became exhausted. When I could not do anything else I reached up and bit him on the face. He beat my face up until it was black and blue all over. This place here (pointing) was bleeding, and my face was a bloody mass. He accomplished his purpose and had intercourse with me; I resisted with all my strength. After he had accomplished his purpose Bill Brown was standing looking in the window, and Harry said, 'Come on in, Bill'; I don't know what Bill said. I was sitting on the side of the cot by this time; had just raised up; just after that I was crying. Harry said 'Come on and get the blood off of you, we won't go home until morn-

ing.' We went into the kitchen and lighted a light, and I went in and got an old dirty towel and started washing the blood up." The first person that came in was Ted Elliott; after Bill Brown and the Morrison girl came in.

Witness further stated that the other parties talked to her about the affair and asked her to explain to her relatives and friends they had a car wreck; that the car drove up during the conversation, and Harry Sledge and defendant went out immediately and left witness and Miss Morrison in the room together. The defendant did not take any further part in the conversation. After that witness was taken home. On the way home witness said Miss Morrison, Elliott, and defendant urged her to explain the affair as a result of a car wreck.

On cross-examination the witness stated she had known Ted Elliott before that night, and knew Harry Sledge when she saw him, but did not know Bill Brown, and did not know whether he was trying to conceal his name or not. When they were sitting in the laps of the boys going down the street, they did not get alarmed, but, when Elliott told them the boys were looking for whisky, she wanted to be taken home, and Elliott promised to take her home. She was in three or four blocks of home when driving on Eighth street. Her sister came out to the Sledge farm and she did not make her presence known because some one closed the door in front of witness when witness started out. She did not call to her sister because she did not have strength. Her sister was talking in a loud voice. There was no one in the room except Ted Elliott and Miss Morrison. The defendant was not present during the assault and mistreatment of witness, and defendant did not lay his hand on witness that night. Witness did not hear defendant say any word of encouragement to Sledge during the affair. Witness stated she got out of the car and went into the house voluntarily. She did not know the house was vacant before she went in. She thought they were going to the Sledge home in the city of

Duncan. She was only in the room a few minutes with Sledge when she heard the car leaving, and Ted went to town. Sledge talked to her a few minutes before he turned the light out. Sledge shoved her against the wall before Elliott went to town, while Elliott was still on the porch. Witness did not scream, because Sledge talked nice to her. Bill Morrison in substance testified as to where she got with the defendant and the other parties that night; that she got in with them and drove to the Sledge farm; that she went into the house, and Sledge came in behind and closed the door; that she asked him to take her home, and he got sore and began choking her, but released her when Elliott came in; that a car drove up about that time, and Sledge went out of the room. "That defendant and I were sitting there and talking about going home when I heard something fall, and then just a minute, why I heard Ethel scream; I asked Bill Brown to go in and help Ethel; he did not want to go. I wanted to go, but the defendant kept me from going. He held me and kept me from going into the room, or going to the rig or calling them; he wouldn't go himself. Bill refused to let me stop the cars that were passing, and shortly thereafter Ted came up. Ted had taken the car and gone to town. Shortly after Ted left I heard something fall in the room and Ethel scream; Ethel was in the house at the time and the door was closed. I was sitting on the porch in the swing with Bill Brown. Ethel screamed continuously for about 20 minutes. I begged defendant to go in there, but he said he was afraid of Harry Sledge. The defendant would not let me do anything. Before defendant went around to the window he made me promise I would sit in the swing until he could see if he could do anything. I got up and started to the rig, and he got hold of me and made me go back to the porch." The testimony further discloses that, after Ted Elliott returned from the city of Duncan, it was discussed by the parties in the room that it should be reported that the prosecuting witness, Ethel Sreywas, received her injuries in a car wreck. Two or

three doctors called as witnesses testified as to the condition of the prosecuting witness.

The defendant called as a witness Ted Elliott. He detailed in substance, the same as the state witnesses, the meeting of the girls in town, and what occurred up to the time they reached the farm; except Elliott denied that the girls asked to be taken home prior to the time they reached the Sledge farmhouse. Witness testified that, when they reached the farmhouse, there were lights in the house; that Sledge invited them to get out and come into the house, and they went into the middle room; that a car came up and defendant went out to the car. Sledge and Miss Morrison went into the front room. Defendant returned to the house, and witness Elliott borrowed the car to go back to town after Lillian Sreywas and some cigarettes. Defendant came out and gave him the keys to the car. When Elliott left, defendant and Miss Morrison sat down in the swing. Witness stayed possibly five minutes at Lillian Sreywas' home, returning to the Sledge farm within a short while. When he returned, he found the defendant and Miss Morrison still in the swing. Witness went through the front room into the middle room, and on back to the kitchen, where Ethel and Harry were. Later they all assembled in the middle room. Ethel began crying. Miss Morrison was talking to her. Witness asked how it all happened, and Sledge replied that "she tried to eat me up and I knocked her loose." A car came up at the time, and Harry left the room. "We all stayed there about an hour discussing the affair," when the defendant and witness Elliott took the girls home, Sledge staying at the farm. On the road it was discussed as to reporting the affair as a car wreck.

Harry Sledge, called as a witness for the defendant, after detailing the meeting of the girls in town, and driving to the farmhouse, stated in substance that he and Bill Morrison went into the front room, and that he loved and

hugged her, but she did not scream. Elliott came in the front room, and later defendant came in. Elliott stated he was going to town to get Lillian Sreywas and some cigarettes. Sledge said he did not shove the Sreywas girl down; she was sitting on a cot on the north side of the room. He did not have a conversation with any of the parties there until after the incident had occurred. "I walked in the room and she was sitting on a cot on the north side of the room. I sat down on the south side of the room on a cot. She walked over and put her arms around me, and I put my arm around her and started hugging and kissing her, and got up and turned off the light, and I had intercourse with her, and she bit me and I knocked her loose; she said I was hurting her, and I said I was going to turn out the light, some one might see us. She stayed on the cot until I came back and sat down there. After it was over I saw Bill Brown come to the window, and I said, 'Come on in, Bill'; he was at the window; he turned and walked off. There was no understanding among any of us that we would go to the Sledge farm. Neither Ted Elliott or the defendant knew I was going to drive out to the farm. I first spoke to Bill Morrison about it and she did not object."

The defendant, as a witness in his own behalf, detailed about their getting together on the evening of the trouble; that Elliott wanted the car to go to town to get Lillian Sreywas and some cigarettes, and witness let him take the car. After Elliott had gone, Miss Morrison came and sat on the porch with him. Elliott was gone about 10 or 15 minutes. During that time defendant's attention was attracted by the scream or yell back in the house. They had been sitting in the swing about five minutes before they heard the scream. "I only heard the scream once; I got up and walked around to the window. Miss Morrison stated that Sledge was beating the girl up, and I went around to see what she was doing; there was no light in

the room; the gas fire was turned off; I could hear them talking, but could not tell what they were saying, it sounded like an argument. Harry hollowed out and said ,'Come on in, Bill.' Ethel was sitting on the side of the cot, and, when Harry asked me to come in—why I did not think—I did not know—didn't think I had any business in there—didn't think there was anything wrong, and went back and sat down in the swing; Bill Morrison went around to the window as I did; she did not say anything to me at the window, nor did she tell me to go anywhere. I did not put my hands on her or keep her from going anywhere. She did not say anything about me going to the oil rig. Miss Morrison did not try to stop the passing cars or to go out to them. There wasn't anything mentioned that evening, there was no understanding between Harry Sledge and myself that we would take the girls to the farmhouse or any other place. I did not know at the time. Ted came back and went into the house that Harry had mistreated this girl in any way; I did not have any understanding at any time to mistreat this girl, or let any one mistreat her."

The foregoing is all of the testimony that we deem necessary to set out for the purpose of reaching an opinion in this case. The record in this case is voluminous, and defendant has filed a brief of more than 200 pages, fully discussing each of the assignments which he deems sufficient to secure a reversal of the case, and urges with great force that the trial court committed error sufficient to entitle him to a reversal. The Attorney General earnestly insists that an examination of the record will clearly show that no error was committed; that the court properly instructed the jury as to the law; and that the testimony is sufficient to sustain the verdict. The record in this case discloses a peculiar condition of facts. We find two ladies upon invitation getting into a car with the defendant and two other young men, going to the house of another young lady in order to get her to join them in a drive. When

she does not go with them the two young ladies and the three young men, all riding in a Ford coupe, the two girls sitting on the laps of the men, driving out to what is spoken of as the Sledge country home; Harry Sledge gets out and goes into the house; Ted Elliott gets out of the car, and, upon invitation of Harry Sledge, the entire party get out and go in the house. After they had been in the house a few minutes, Elliott borrows the car from defendant and stated he was going back to town to get Lillian Sreywas, a sister of Ethel, and some cigarettes. Elliott left Bill Morrison and Bill Brown, the defendant in this case, sitting in a swing on the front porch, and Harry Sledge and Ethel Sreywas in the house. Shortly after Elliott left the house Bill Morrison claims she heard something fall, and then she heard a scream, and implored Bill Brown to go to Ethel's rescue; that Ethel kept screaming several minutes; that, after the screaming ceased, Bill Brown went around to the window to see what was going on, but required Bill Morrison to promise him she would not leave the swing to go in the house, or to the drill rig that was in operation near by. Defendant denies the statement of Bill Morrison, but admits he went to the window, and that Harry Sledge called to him to come on in. Ethel Sreywas says Harry called to him. This was after the alleged offense of rape had taken place. Defendant did not go into the house when called by Sledge.

The record shows that Elliott soon returned to the house, and went in and demanded to know what had taken place, and then it was that Harry Sledge told him what had taken place while he was making the trip to town. All agree that it was discussed that this incident should be reported as a car wreck in order to not injure the reputation of the outraged witness, Ethel Sreywas. The girls insist that from the time they started out from town they asked the boys to drive them back home, and they would not do it. They were all young people, and it is clear from

the record that Harry Sledge intended to carry out what he carried out when he drove the parties out to the place where the alleged offense occurred. Defendant denies any knowledge of the intention of Harry Sledge, and, in considering the question of his guilt or innocence, it is necessary to consider his actions at the time the screams were heard in the room and his effort to rescue the girl, or to find out what was going on. His action, as disclosed by the record, clearly indicated, whatever the trouble may be, he had no desire to interfere, or to prevent Sledge carrying out whatever purpose he had in mind. The testimony is sufficient to warrant the jury in finding that Harry Sledge, forcibly and against the will of Ethel Sreywas, raped her. The question then to be determined in this case is: Is the testimony sufficient to show that this defendant, by his actions or words, aided, abetted, or assisted Harry Sledge in carrying out his purpose in raping Ethel Sreywas? The defendant insists that the facts and circumstances are consistent with his innocence, and that the trial court should have instructed the jury to return a verdict in favor of the accused, and that the verdict is not supported by sufficient evidence—citing Crabtree v. State, 18 Okla. Cr. 125, 193 P. 1005, and many other cases.

A careful examination of the authorities cited by the defendant show that the facts in the cases cited are not similar to this case. As disclosed by the record, Sledge, who is alleged to have committed rape upon the person of Ethel Sreywas, was in the house with her when Elliott returned to town and defendant had Bill Morrison out on the porch, and they sat down in the swing, it being in February, and the proof discloses there had been some rain that evening. All facts and circumstances indicate that the defendant was keeping Bill Morrison out on the porch in order to give Harry Sledge an opportunity to commit the crime he was alleged to have committed, and the fact that he did not go into the house when he heard the girl scream,

and did not want Bill Morrison to go in or to go to the drill rig, are circumstances strongly indicating that the defendant knew what was going to happen, and his failure to go in the house was not such conduct as is expected of a law-abiding citizen, when he heard the screams of a young girl who was in the room with a man and the lights were turned out. In Blanck v. State, 14 Okla. Cr. 339, 169 P. 1130, the court said:

"This court has repeatedly held that the least degree of concert of action or collusion makes the act of one conspirator the act of all, and each conspirator is liable for the act of each other conspirator done in pursuance of such conspiracy." Holmes v. State, 6 Okla. Cr. 542, 119 P. 430, 120 P. 300; Ex parte Hayes, 6 Okla. Cr. 321, 118 P. 609; Wishard v. State, 5 Okla. Cr. 611, 115 P. 796.

We hold that the evidence was sufficient to warrant the court in overruling defendant's motion for a directed verdict of not guilty. This court has repeatedly held that, where there is competent evidence, though conflicting, it was the province of the jury to pass upon the same under proper instructions from the court.

The defendant further urges that the court committed an error of law in his instructions to the jury, and erred in refusing to give certain requested instructions by the defendant. After a careful examination of the instructions given in their entirety, we find they correctly state the law applicable to the facts contained in the record, and for this reason the court did not err in refusing to give instructions requested by the defendant. The instructions requested by the defendant are substantially covered by the instructions given by the court, and the refusal of the court to give the requested instructions did not prejudice defendant.

It is next urged by the defendant that the county attorney, in his closing argument, made statements preju-

dicial to the rights of the defendant, and that the statements made by the county attorney in his closing argument deprived the defendant of a fair and impartial trial. A careful reading of the record discloses that most of the argument complained of was not objected to by the defendant, and no motion was made by the defendant to exclude the argument objected to. Considering all of the testimony in the case, we hold that the argument presented by the county attorney did not prejudice the rights of the defendant. It is urged that the punishment assessed is excessive, unreasonable, and appears to have been given under the influence of passion and prejudice, which has been brought about by the conduct of the county attorney representing the state. We hold that the testimony is sufficient to warrant the jury in finding the defendant guilty. However, it is both the spirit and the intention of the law that the punishment shall be imposed in criminal cases for the protection of society and the reformation of the criminal, and sentences should be imposed in keeping with the spirit of the law. Spears v. State, 10 Okla. Cr. 563, 139 P. 841; Williams v. State, 19 Okla. Cr. 307, 199 P. 400.

The evidence is sufficient to sustain the verdict, the instructions were fair to the defendant, and substantially stated the law. In view of the facts and circumstances shown by the record, we are inclined to think that the ends of justice will be properly met by a modification of the term of imprisonment from 20 years to 15. The judgment and sentence herein will therefore be modified to 15 years in the penitentiary, and, as thus modified, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.