(72 N. W. Rep. 912.)

---

### STATE OF NORTH DAKOTA vs. JOHN B. HAYNES.

Opinion filed November 4th, 1897.

#### Accused as Witness—Cross-Examination—Rebuttal Evidence.

> In this case collateral and irrelevant matter, not adverted to in the examina-
> tion in chief, was drawn out on cross-examination of the defendant as a

witness. In rebuttal, and against objection, the state was permitted to contradict such collateral matter by testimony of a damaging nature highly prejudicial to the defendant. *Held*, that the ruling was prejudicial error, and the judgment must be reversed therefor.

BARTHOLOMEW, J., dissenting.

Appeal from District Court, Cass County; *Lauder*, J.

John B. Haynes was convicted of burglary, and appeals. Reversed.

*Taylor Crum* and *Ida M. Crum*, for appellant.

It was error to allow Mrs. Webster to testify for the state over defendant's objection, her name not being indorsed upon the information. *State* v. *Kent*, 5 N. D. 535; *Peo.* v. *Hall*, 12 N. W. Rep. 667; *Peo.* v. *Howes*, 45 N. W. Rep. 962; *Peo.* v. *Quick*, 25 N. W. Rep. 302; *Gandy* v. *State*, 40 N. W. Rep. 305; *Stevens* v. *State*, 28 N. W. Rep. 304; *Binkly* v. *State*, 52 N. W. Rep. 708. When a witness is cross-examined on a matter collateral to the issue, his answer cannot be subsequently contradicted by the party putting the question. Whart. Cr. Ev. 484; Starkie on Ev. 200; *Welch* v. *State*, 3 N. E. Rep. 852; 1 Whart Ev. 558–559; Greenl. Ev. 449; *George* v. *State*, 20 N. W. Rep. 311; *Peo.* v. *Jones*, 31 Cal. 571; *Hamilton* v. *Peo.*, 9 N. W. Rep. 248; *Peo.* v. *McKellar*, 53 Cal. 65; *Peo.* v. *Bell*, 53 Cal. 119; *Johnson* v. *Spencer*, 70 N. W. Rep. 983; *Frederick* v. *Ballard*, 20 N. W. Rep. 872; *Pierce* v. *Schaden*, 59 Cal. 540; *State* v. *Townsend*, 24 N. W. Rep. 537; *Peo.* v. *Deitz*, 48 N. W. Rep. 298; *Stokes* v. *Peo.*, 53 N. Y. 440; *State* v. *Davidson*, 70 N. W. Rep. 879; *Carpenter* v. *Ward*, 30 N. Y. 243; *Peo.* v. *Hillhouse*, 45 N. W. Rep. 486; *Trust Co.* v. *Montgomery*, 46 N. W. Rep. 216; *Hooper* v. *Browning*, 27 N. W. Rep. 419; *Simmons* v. *State*, 4 Tex. App. 144; *Peo.* v. *Chin Mook Sow*, 51 Cal. 600; *Peo.* v. *Jenkins*, 56 Cal. 6.

*F. B. Morrill, State's Atty.*, for respondent.

The witness objected to was not known to the state's attorney at the time the information was filed. Section 7985, Rev. Codes; *State* v. *Kent*, 5 N. D. 535; *Territory* v. *Godfrey*, 6 Dak. 46, 50 N. W. Rep. 481; *State* v. *Dickson*, 6 Kan. 209; *State* v. *Medlicott*, 9 Kan. 282; *State* v. *Lewis*, 19 Kan. 265; *State* v. *Cook*, 30 Kan. 82;

1 Pac. Rep. 33. The evidence complained of by appellant was competent as tending to rebut evidence offered by the defense tending to establish an alibi    *Peo.* v. *Gibson,* 9 Am. Cr. Rep. 85; *State* v. *McKinney,* 5 Am. Cr. Rep. 538; *Power* v. *Leach,* 26 Vt. 270; *Cady* v. *Owen,* 34 Vt. 598; *Howe* v. *Thayer,* 17 Pick. 91.

WALLIN, J.   The defendant, together with one Thomas Mc-Kenzie, was charged in the information with the crime of burglary, committed at Hunter, in Cass County, on the 15th day of November, 1896, and was found guilty, and sentenced for such offense. A motion for a new trial based on a statement of the case was overruled, and the record embracing the evidence and proceedings at the trial is now before this court for review.   We find numerous assignments of error in the record, all of which have been considered by the court; but we deem it necessary, in disposing of the case, to discuss only such of the assignments as are hereafter mentioned.   The evidence is not disputed that a burglary was committed on the night of the 15th or morning of the 16th day of November, 1896, at Hunter, N. D., in the Great Northern depot building.   An entry was made in the building either by raising the window sash, over which there was or had been a nail, or through the door, which was locked the night of the burglary, but was not broken.   A safe in the depot was blown open with gunpowder, and money and other property within the safe was taken.   McKenzie, who was accused by the information as a co-defendant, on a plea of guilty, was convicted of the offense, and is serving a term in the state's prison.   One James Ream, who was also informed against for the same offense, testified in behalf of the state, and his testimony is to the effect that McKenzie, the defendant, and himself were in the vicinity of Hunter for several days immediately prior to the night of the burglary, and that all three were in Hunter on that night, and left the locality before daylight on the morning of the 16th of November, and that all three reached Moorhead on the night of November 17, 1896.   Ream testifies also that at the time of the actual commission of the burglary he was not present, but that, soon after,

the three were together, and that the witness was given some of the stolen property taken from the depot. On the night of the 17th of November, 1896, the defendant and the witness Ream, were arrested while occupying the same bed in an hotel at Fargo, but defendant was soon after discharged from such arrest. Defendant was again arrested on November 20, 1896, and, on being searched by the officer, two drills and a punch were found on his person. These tools were put in evidence, the defendant objecting to such evidence on the ground that it was too remote, and did not connect the defendant with the commission of the offense charged. The defense interposed at the trial was that of an alibi. It was claimed in defendant's behalf that he was at Moorhead and Fargo on the 14th, 15th, and 16th days of November, 1896. If this claim was true, it is conceded that defendant could not have been at Hunter on the night of the burglary. William Oliver, Walter Garrison, and John Keating were called as witnesses by the defendant, and they testified, in substance, as follows: Oliver testified that he was the clerk of the Northern Pacific Avenue Hotel in Fargo on the 15th day of November, 1896, and that there was then a barber shop in the hotel, kept by said Garrison; that in the forenoon of that day the defendant came to the hotel, and was shaved by Garrison. This was corroborated by the testimony of Garrison. Oliver further testified that in the evening of the same day the defendant came back to the hotel in an intoxicated condition, and that he (Oliver,) after receiving the sum of 50 cents from the defendant, showed him to bed; and that he remained in the hotel that night. Keating also testified that he was present the same night, and saw the clerk of the hotel show defendant to bed. Two other witnesses testified that they were saloon keepers, and knew defendant, and remembered his arrest in Moorhead on November 20th, and that defendant had for a week or ten days preceding his arrest been frequently engaged in drinking and buying drinks and playing cards in their saloon at Moorhead. In further support of the alibi the defendant testified in his own behalf, corroborating the

other witnesses as to where he was on the 15th and 16th days of November. There was no other feature of the defendant's testimony in chief of importance, except that he testified that he did, at McKenzie's request, and for his accommodation, purchase a couple of drills and a piece of steel of one Loudon, at Moorhead, on the day of his last arrest, and never had an opportunity to deliver them to McKenzie. Loudon testified also as to the purchase of these articles on the 20th, and further states that the tools were such as are commonly used by machinists and other mechanics. On his cross-examination defendant stated as follows: "I paid my lodging before I went to bed. I had eight dollars or ten dollars, which I had earned up at Conway, North Dakota, in the fall of 1896, through October. Was at Conway in October, 1896, working at threshing—connected with the engine,—for Mr. McCann. * * * He lives one mile south and seven west of Conway. I worked all through threshing for him. I think twenty-seven days, firing engine, until October, when I left. Then I left there, and went to work at Larimore. Went to work for a a man by the name of Mills. I left Mills about October 20th." He further testified: "I don't remember of earning any money from early in September to the time of my arrest, except what I have mentioned. That was about all I had until my arrest." The state, in rebuttal, and against defendant's objections thereto, showed by the testimony of two of the officials of Steele County, N. D., that the defendant was arrested in Steele County on or about the 12th day of September, 1896; and that after a preliminary examination defendant was held to answer at the next term of the District Court for Steele County, and in default of bail he was imprisoned, and remained in jail continuously until November 10, 1896, at which date the defendant was discharged from arrest in a state of penury. At the proper time all of this testimony as given by the officials of Steele County was objected to by the defendant's counsel, and a motion was make to strike it from the record, upon the ground that such testimony was "matter introduced by the state for the purpose of contradicting collateral

matter brought out by the state upon cross-examination, and matter not adverted to in the direct examination." Defendant's counsel saved exceptions to these rulings, and they are assigned as error in this court. It is manifest that the testimony thus offered in rebuttal was of a highly prejudicial character. If the jury believed the same to be true, and the testimony was, in its nature, credible, the defendant was thereby discredited and wholly impeached as a witness, and the defense of an alibi (in so far as it rested on the testimony of the defendant) was completely demolished, and the defendant himself was degraded in the eyes of the jury as a deliberate falsifier under oath. A verdict of guilty was certainly a result which followed naturally, if not inevitably, from testimony so damaging as this. The propositions of fact made in support of these assignments of error by the defendants may be stated as follows: First, that the rebutting evidence was offered by the state for the sole purpose of contradicting the statements of the defendant as to certain matters drawn out for the first time on defendant's cross-examination; second, that such matter was not adverted to on defendant's examination in chief; third, that such matter (drawn out on cross-examination) was wholly collateral to the issue which the jury was sworn to try, viz.: whether the defendant committed a burglary at Hunter, on the 15th day of November, 1896, as charged in the information. These propositions, so far as they embody statements of fact, are undeniably true. The statement that the defendant had worked near Conway, N. D., for twenty-seven days, on a threshing machine, for one McCann, in the months of September and October, 1896, and thereby earned wages, and that defendant had performed other labor for one Mills at Larimore, N. D., in October, 1896, for which he received wages, or that he had money to any amount, or ever earned wages at any time or place, were statements of fact constituting new matter never alluded to on defendant's examination in chief. The testimony offered in rebuttal was for the ostensible purpose of disproving these specific facts by showing that the defendant never

performed any of the labor which he had testified to performing, and hence had never earned any of the wages which he claimed, in his cross-examination, to have had and earned in September and October. That the evidence we are now considering was for the first time drawn out on cross-examination is perfectly clear, and it is conceded. In the opinion of this court, such evidence was also purely collateral in character. If it was such, it was clearly error (against objection) to contradict such evidence by the testimony offered in rebuttal by the state, or at all. It is manifest that the evidence drawn out on defendant's cross-examination, and tending to show where and for whom he worked in the months of September and October, 1896, would be inadmissible if offered by the state in support of the allegations in the information. Such evidence could have no possible relevancy to a burglary committed long subsequent thereto, and in another county. But the fact that such evidence so drawn out on cross-examination would be inadmissible if offered by the state in support of its case is precisely the criterion, under the authorities, which determines its character as collateral testimony. This well-established rule is variously stated by the elementary writers cited below as follows: "The test of whether a fact inquired of in cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?" Whart. Cr. Ev. § 484. In Starkie, Cr. Ev. § 200, the author says: "It is here to be observed that a witness is not to be cross-examined as to any distinct collateral facts for the purpose of afterwards impeaching his testimony by contradicting him." In *Welch* v. *State* (Ind. Sup.) 3 N. E. Rep. 852, the court says: "Whether the matter inquired of on cross-examination was collateral to the main inquiry or not is determined by this inquiry: Would the prosecuting attorney have been permitted to introduce it in evidence as part of the state's case? If he would not, it was collateral. If it was collateral, it was not competent to contradict it,"—citing Whart. Cr. Ev. § 559. In Greenl. Ev. § 449, the rule is thus stated: "And, if a question is put to a wit-

ness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him." This salutary, firmly settled, and long-established rule of evidence has been applied in adjudicated cases too numerous to mention, and therefore we shall not consume space unnecessarily by citations of further authority in its support, especially as the existence of the rule as it has been stated is conceded by counsel for the prosecution. "The philosophy of the rule is that it tends to prevent the multiplication of irrelevant issues, which, if permitted to be lugged into the case, would not only protract trials to an interminable length, but would directly tend to confuse and divert the minds of the jury from the merits of the case on trial, and thereby tend to thwart the chief purposes of the law. Moreover, it would be manifestly unjust to require a suitor entirely without notice to meet collateral issues of fact which he could not anticipate because irrelevant; *i. e.* not embraced within any issue of fact joined by the pleadings. The case in hand strikingly illustrates the necessity for the rule which is invoked by the defendant. The accused was charged with the commission of a burglary at Hunter, in Cass County, on November 15, 1896. His plea put the change in issue. Therefore defendant was chargeable with notice that any fact bearing on that specific issue would be competent as evidence at the trial, and he must be prepared to meet it. But how was the defendant forewarned by this accusation that irrelevant matter, not referred to in his examination in chief, would be investigated at the trial? How was he apprised in advance that his own statements as to such foreign matter would or could be drawn from him on cross-examination, and then contradicted on rebuttal by the state? How could the defendant be expected to be ready with his witnesses to meet the witnesses against him on this side issue, and be prepared to overthrow their testimony by other witnesses of his own, who would corroborate his own statements on the stand, and also impeach the witnesses on the part of the state? These questions illustrate the necessity of the enforcement of the rule,

and we must, therefore, give the defendant the benefit of the rule. The state's attorney seeks to evade the force of the rule, while admitting its existence. His contention is, in a nutshell, that the cross-examination of defendant was proper, and that all matter elicited by it is also proper. He argues that, inasmuch as the defense of an alibi as testified to in chief by the defendant showed the fact that the defendant was being entertained at hotels and in saloons at Moorhead and Fargo on the 15th and 16th of November, 1896, it was therefore proper on cross-examination to follow this feature up by showing where the defendant earned the money which it was assumed he was disbursing, and hence (according to the argument) all of the statements made by defendant on cross-examination relative to his working for wages in the month of September and October preceding the date of the crime in question were properly drawn out under the rules of cross-examination. In this case the matter drawn out on cross-examination was not objected to, and hence is properly in evidence, despite the fact that it would be entirely inadmissible if offered by the state in support of the charge. We doubt very much whether the greater part of the new matter could have been received as against objection. But the rule which we have applied to the case is not a rule regulating the right of cross-examination. Its scope is to declare that any collateral evidence which is drawn out by the cross-examiner shall not be contradicted in rebuttal, but must be allowed to stand as drawn out. It follows that the consequences of the application of the rule cannot be evaded by the contention that the collateral matter drawn out by the cross-examination was properly elicited under the right of cross-examination. Indeed, the rule never has, nor can have, an application until the cross-examination has drawn out matter collateral to the issue. We think the rule was violated. Therefore, upon the grounds we have stated, the judgment must be reversed, and a new trial granted.

Another feature of the case may become important in the event of another trial. It appears that the defendant was arrested

on the night of the 17th of November, 1896, at Fargo, and was discharged after being in custody a few hours. The officers searched the defendant, and it does not appear that any burglarious tools, or any kind of tools, were found in his possession on that occasion. He had a package of gunpowder on his person, which was put in evidence, and properly, as we think. The arrest was near in point of time to the date of the burglary. Moreover, it is undisputed that the safe in question was blown up by means of gunpowder. This fact, in connection with the other evidence tending to inculpate the defendant, and connect him with the crime, would, we think, justify the introduction in evidence of the gunpowder taken from defendant's person. The weight of such evidence would be for the jury. But the prisoner was arrested a second time, to-wit, on November 20th, which was four days after the date of the burglary. On his person were found a punch and two drills, which were put in evidence against defendant's objection. It was shown that the defendant purchased the two drills at Moorhead on the day of his last arrest, and, further, that the drills were such as might be used and were commonly used by machinists, blacksmiths, and other mechanics. Under the circumstances, and particularly in view of the fact that no such tools were found in the defendant's possession upon the occasion of his first arrest, we are inclined to the opinion that the evidence was improperly admitted, and especially so as no evidence offered tended to show that either a punch, or a drill, or similar tools were used in the commission of the crime, although such instruments may have been used in perforating the safe for the introduction of gunpowder, which was shown to have been used. But, as the case must be reversed upon another point, it will be unnecessary to determine whether, under the circumstances, the error involved in the admission of these exhibits in evidence was of such a character as to be prejudicial to the substantial rights of the defendant. The judgment is reversed, and a new trial granted.

CORLISS, J., concurring.

BARTHOLOMEW, J. (dissenting).   I am unable to concur with my associates in this case.   The rule of evidence upon which the opinion of the majority is based is elementary, but I do not think this case comes within the rule; in other words, I do not think the matters drawn out on cross-examination of the defendant when on the stand as a witness for himself were collateral.   I will state my reasons briefly.   Defendant rested his defense entirely upon alibi.   On the stand he denied his guilt, denied being present at the scene of the crime, and claimed that he had been elsewhere, to-wit, at Fargo and Moorhead, for two days prior to the time of the commission of the crime.   To fortify this claim, and make it appear reasonable to the jury, he proceeded to relate in detail where he had been, and what he had done during those two days and nights, and he testified to staying over night at certain hotels, procuring meals at certain restaurants, getting drinks at saloons, and getting shaved by a barber.   All this was on his direct examination.   True, he did not in so many words testify that he paid for these things, but such entertainment can, ordinarily, be obtained only by payment, and there is no possible doubt that he intended the jury to understand that he did pay for them, just as other witnesses for him had testified.   Now, it seems very clear that it would discredit his alibi to show that he was without means to pay for all this entertainment to which he testified.   I think it too plain for argument that the state had the right at that stage of the case, and in rebuttal of defendant's examination in chief, to show that he had no money.   The state could do this by cross-examination, and, if the defendant answered falsely as to such matter, it was the right of the state, if it could, to contradict such false answers by its own witnesses in rebuttal.   In my judgment, the state did nothing more.   Defendant, on his cross-examination, promptly said that he paid his hotel bill the first night; that he had eight or ten dollars that he earned at a particular time and place; and, in substance, said that he had no other money.   To that extent the state succeeded in showing on cross-examination that he had no money.   If, then,

the state could show by its own witnesses that he did not earn any money at the time and place that he claimed to have earned the only money he claimed to have, it would conclusively have shown that he in fact had no money at the time he claimed to have been procuring all this entertainment, and thus his alibi would have been, to some extent at least, discredited. The state did nothing more. True, the testimony introduced by the state had a tendency not only to contradict the defendant, but also to discredit and disgrace him before the jury. But that is no reason for excluding it, provided it is pertinent to the issues, which I think it was. The judgment should be affirmed.

(72 N. W. Rep. 923.)