EMERSON W. QUEEN v. STATE.

No. A-3752. Opinion Filed Nov. 18, 1922.
Rehearing Denied March 12, 1923.
(212 Pac. 1021.)

(Syllabus.)

1. **Continuance—Discretion of Court—Denial in Absence of Showing of Diligence.** It is no abuse of discretion to overrule an application for continuance on the ground of absence of witnesses who are out of the state, where it is not shown that any one of them would or could be procured within any reasonable time, and where no diligence is shown to procure their attendance or to take their depositions, and where their alleged testimony, considered in connection with other facts proven on the trial, appears to be probably untrue.

2. **Same—Reasonable Time to Make Defense—Delay in Procuring Witnesses.** Every defendant has a right to have a reasonable time to make his defense, but neither a defendant nor his counsel will be justified in waiting until the day of the trial to procure witnesses.

3. **Same—Unpreparedness of Counsel.** Where counsel for defendant had been busy in other cases, and where one of his counsel was sick, but able to participate in the greater portion of the trial, it was within the discretion of the court to grant or refuse a continuance.

4. **Same—Application Based upon Hearsay Statements or Mere Rumor.** An application for a continuance, predicated upon hearsay statements of third persons or mere rumor, is insufficient.

5. **Witnesses—Defendant on Cross-Examination Subject to Rules Applying to Other Witnesses.** The rule is well established in this state that, where a defendant takes the stand in his own behalf, he becomes a witness on cross-examination, subject to all the rules applying to other witnesses.

6. **Witnesses—Impeachment—Questions as to Convictions of Offenses Involving Moral Turpitude.** A witness may be asked, for the purpose of affecting his credibility, if he has been convicted of a felony, or of any crime which involves a want of moral character; a conviction of violating the prohibitory law involves moral turpitude.

7. **Witnesses—Limiting of Cross-Examination as to Collateral Matters.** The limiting of cross-examination of a witness concerning matters purely collateral and not germane to the issue, for the purpose of impeaching the witness, held not error.

8. **Trial—Rule as to Preservation of Objection to Exclusion of Evidence.** As a general rule, in order to reserve an available objection to the exclusion of evidence, a proper question must be asked, and, on objection thereto, an offer must be made at the time, showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all the facts necessary to establish its admissibility.

Appeal from District Court, Woods County; Arthur G. Sutton, Judge.

Emerson W. Queen was convicted of grand larceny, and he appeals. Affirmed.

A. J. Stevens and W. A. Briggs, for plaintiff in error.

George F. Short, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for the state.

BESSEY, J. Emerson W. Queen, plaintiff in error, herein referred to as the defendant, was on the 15th day of October, 1919, convicted of the larceny of an automobile, and the court, on October 18, 1919, fixed his punishment at confinement in the state penitentiary for a term of five years.

The proof in this case shows that Grant Van Bibber, the prosecuting witness, lived at Alva, Okla., where he was engaged in the real estate business; that he was the owner of a green Hudson Speedster automobile, on which there was one Royal Cord tire and three Firestone tires, with treads of three different designs; that this car, which was nearly new, was stolen from the owner's garage at Alva on the night of June 19, 1919; that one of the fenders had been broken and repaired with a line of rivets; and that the rear curtain of the top had been altered by placing therein a large plate glass. Immediately upon discovery of the theft, the morning of June 20th, witness notified the sheriff of Woods county, and with the sheriff tracked and followed the car for some distance leading toward Wichita, Kan. The sheriff also sent a description of the stolen car to police officers in adjacent towns in Kansas and Oklahoma.

The defendant, Emerson W. Queen, and his father, Dr. Queen, lived in Wichita, Kan. Reports came to the sheriff's office that the stolen car had been seen and identified in Hutchinson, Kan., in the possession of the defendant. A deputy sheriff went to Wichita, and inspected the premises of Dr. Queen, where there was a barn used as a kind of garage, in which there were two large acetylene or oxygen tanks, some mud chains, and possibly other automobile equipment. Tracks corresponding to the tread of the tires on the stolen automobile were found on the floor and approaches of this barn. Dr. Queen at that time was said to own a Chandler car, but no car of any kind was in this garage at the time the inspection was made. The deputy sheriff then interviewed Dr. Queen, and informed him that his son and one Jay Elliott were suspected of having stolen the missing car, and, according to the testimony of this deputy sheriff, Dr. Queen remarked to the officer that these boys had been causing

him lots of trouble, and promised to procure the delivery of the car to the deputy sheriff that evening, at a designated hour and place on the streets of Wichita. Dr. Queen failed to make good his promise, giving as a reason that he was unable to find his son and Elliott, but again promising that he would do so presently and procure the car for the officer. In one of these conversations he protested that he had had nothing to do with the taking of the car. After making three promises of this character, he finally reported that he had located his son, but that he claimed to have had nothing to do with the car, and knew nothing of its whereabouts. This was on the Saturday following the theft of the car.

It was the theory of the state that Dr. Queen made these promises to the deputy sheriff in bad faith, for the purpose of detaining the officer, and in the meantime aiding his son and Jay Elliott to escape. The defendant did escape, and became a fugitive from justice under the assumed name of Ed Sherman. Some months later he was apprehended in Memphis, Tenn., and brought back to Woods county, Okla. Two or three days after defendant's return to Oklahoma the stolen car was found, partially concealed between two straw stacks near Kingman, Kan. The engine number had been changed, apparently by the use of an acetylene torch; the plate glass in the rear curtain had been removed; the tread on the tires was much worn, indicating that the car had been run several thousand miles.

Pete Grandon, a witness for the state, was in the automobile and garage business at Hutchinson, Kan., and incidentally was authorized to help the sheriff of that place to locate and recover stolen cars. He had a description of this stolen Hudson, and on the first or second day following the theft this witness saw defendant driving a green Hudson roadster in

Hutchinson, noticing at the time the fender, which had been repaired with rivets. As the defendant was driving north across Main street, at about 12 or 15 miles an hour, the witness was stopped by a jam of cars, and before he could get out of this traffic jam defendant was out of his sight, and he was unable to follow him. Witness notified the sheriff, who in turn notified the officers of Woods county, and the deputy was sent to search for the car as above stated.

It was further shown in evidence that at the time this car was stolen it had a defective or weak battery, which caused the lights to flicker, and that two persons residing along the road leading from Alva to Wichita saw, in the early morning of the 20th of June, a fast-moving roadster having lights of this description.

Defendant's defense was an alibi. He claimed that at the time the car was stolen he was with two men named Buford and Metz on a fishing trip on Rock creek, about 40 miles southeast of Wichita and about an equal distance from Alva; that the fishing party was at this point from the morning of the 19th until the evening of the 24th of June. Defendant claims that he returned to Wichita on Sunday, June 22d, and learned from his father that he was accused of having taken this car; that he then returned to Rock creek, remaining there until Tuesday evening, when he again returned to Wichita, and immediately departed for the Kansas harvest fields; that his health was poor, and he did little work; that he assumed the name of Ed. Sherman. After remaining in the harvest camps for some time, he went to Memphis, where he was also known as Ed. Sherman. At the time of his arrest in Memphis he had two automobiles, one of which he claimed was his and the other his father's; he also had on his person $3,800 in currency at the time of his arrest.

On rebuttal the officer who brought the defendant back from Memphis testified that the defendant told him, on the way home, that he was in Omaha at the time the car was stolen. There is other unimportant testimony in the record tending to throw some light upon the transactions above related, which need not be here recited.

The first assignment of error urged by defendant is that the court abused his discretion in overruling the motion for a continuance. It was alleged in the application for a continuance that one Clyde Smith, of Hutchinson, Kan., was a material witness for the defendant, setting out somewhat in detail the testimony expected to be given by this witness. Without going into the question of the relevancy of the testimony sought through this witness, there was no showing that the witness could be procured later or where he was, except that he was referred to as Clyde Smith of Hutchinson, Kan. No showing was made that he was in Hutchinson at that time, and no showing or declaration was made that his evidence could probably be obtained. It appears further that the defendant did not learn of the facts expected to be proved by this witness until Saturday, October 11th, three days before the trial. During a part of the intervening time the defendant's attorneys had been engaged in another trial. The court, in the absence of the jury, interrogated the defendant, and found that the defendant did not know Clyde Smith, and that he did not know where he lived; that the statements contained in the affidavit for a continuance were based upon information given him by one Stevens, and that defendant did not even know from what source Stevens had obtained his information. Stevens, though apparently available, gave no supporting evidence. A court should not grant a continuance to procure evidence predicated upon mere rumor. Moreover, it appears from the record elsewhere that

the defendant, some weeks prior to the trial, had been apprehended and arrested at Memphis, Tenn., in possession of two automobiles and $3,800 in money; that Dr. Queen, his father and codefendant, and the defendant, himself, were at large on bond. It would therefore appear that the defendant could have made some effort to procure this witness, or at least could have obtained more definite information concerning the facts sought to be shown by the witness. The witness, if present, might have testified to an entirely different state of facts.

The application also stated that the defendant desired the testimony of William Buford and Ed. Metz, of Wichita, Kan., who were alleged to have been with the defendant on a fishing trip at the time the automobile in controversy was stolen. No showing was made that these witnesses could probably be procured later, and no efforts appear to have been made by the defendant or his attorneys or by the defendant's father to definitely locate or procure these witnesses.

It is further urged in the application that the time of defendant's counsel had been taken up by the trial of other causes to such an extent that they could not go to Hutchinson and Wichita to locate and interview these witnesses. It appears to us, and probably appeared to the court, that a defendant having $3,800 in money had the means to procure this testimony in other ways. Under such circumstances the defendant had no right to assume that it was unnecessary for him to make any effort to procure testimony, and that he could wait until the day of trial, expecting the indulgence of the court in granting a continuance. In Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719, it was held:

"It is no abuse of discretion to overrule an application for a continuance on the ground of absence of witnesses, who

are out of the state, where it is not shown that any one of them would or could be procured within any reasonable time, and where no diligence is shown to procure their attendance, or to take their depositions, and where their alleged testimony, considered in connection with other facts proven on the trial, appears to be probably untrue'' Tucker v. State, 9 Okla. Cr. 587, 132 Pac. 825; Buxton v. State, 11 Okla. Cr. 85, 143 Pac. 58; Harrison v. State, 10 Okla. Cr. 210, 135 Pac. 948.

Every defendant has a right to be represented by counsel and a right to have a reasonable time to make his defense, but neither the defendant nor his counsel will be justified in waiting until the day of trial to procure witnesses. Davis v. State, 10 Okla. Cr. 169, 135 Pac. 438; Jones v. State, 8 Okla. Cr. 576, 129 Pac. 446. Where counsel for defendant had been busy in other cases, and where one of such counsel was sick, but able to participate in the greater portion of the trial, it was within the discretion of the court to grant or refuse a continuance. 6 R. C. L. ''Continuance,'' § 6. For the reasons stated above, supported by the cases cited, we hold that there was no abuse of discretion in overruling the motion for a continuance in this case.

The defendant complains further that the court erred in permitting the deputy sheriff to relate conversations with Dr. Queen at Wichita. The information in this case charged that this defendant, Jay Elliott, and Dr. Queen, acting together and with each other in pursuance of a common design and purpose, stole the automobile in question, and upon that theory of the case it was proper to show any acts or conversations of any of the coconspirators that might tend to throw light upon such common purpose or design, if any there was. The question of whether or not there was such a conspiracy was for the jury upon consideration of all the evidence touching upon that point. Proof of a conspiracy to commit a crime must of necessity in most cases be made by showing a num-

ber of independent acts, conversations, or circumstances tending to show an unlawful common purpose of the conspirators; and the order in which such proof is made is ordinarily not material. Matthews v. State, 19 Okla. Cr. 153, 198 Pac. 112; Adams v. State, 21 Okla. Cr. 448, 209 Pac. 189. In this case there was proof tending to show a concert of action between this defendant and his father, Dr. Queen.

The defendant took the witness stand in his own behalf and on cross-examination, for the purpose of affecting his credibility, the following questions were asked him:

"Q. Have you ever been convicted of the offense of dealing in narcotics in the city of Wichita, Kansas? A. No, sir.

"Q. Or of any crime? A. No, sir; never was convicted.

"Q. Did you ever plead guilty of a crime? A. I haven't plead guilty to a felony.

"Q. Did you ever plead guilty to a misdemeanor? A. I think so.

"Q. What was that misdemeanor? A. I had a drug store there, and I may have pleaded guilty to violating the prohibitory law. Never was convicted in any higher court."

Objections were interposed to all of these questions, and exceptions taken and allowed.

Section 585, Comp. Stat. 1921, provides:

"No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime; but such interest or conviction may be shown for the purpose of affecting his credibility."

Section 2699, Comp. Stat. 1921, provides that, except as otherwise provided, the rules of evidence in civil cases shall be applicable to criminal cases.

The rule is well established in this state that, where a defendant takes the stand in his own behalf, he becomes a witness on cross-examination subject to all the rules applying to other witnesses. Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341.

In an early case (Slater v. U. S., 1 Okla. Cr. 275, 98 Pac. 110) it was held that a witness may be asked, for the purpose of affecting his credibility, if he has been convicted of a felony, or of any crime which involves want of moral character (Sights v. State, 13 Okla. Cr. 627, 166 Pac. 459; Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341; Byars v. State, 15 Okla. Cr. 308, 176 Pac. 253). It has been held in this state that a conviction of violating the prohibitory law involves moral turpitude. Musgraves v. State, 3 Okla. Cr. 421, 106 Pac. 544; Fowler v. State, 8 Okla. Cr. 130, 126 Pac. 831. The questions complained of were not in proper form. However, all the questions were answered in the negative except one, and the fact that this question was not in proper form, considered with the answer given, is, in our opinion, not prejudicial under the circumstances here.

The defendant complains further that there was error in sustaining objections to certain impeaching questions asked the witness Grandon. On cross-examination this witness had been questioned in some detail with reference to his connection with a certain Buick car that had been stolen at another time by other persons. In the course of this examination defendant sought to show that this witness was endeavoring to conceal this Buick car, and that there was an agreement between Van Bibber and the witness that Grandon was to have this Buick car in consideration of his testifying in this case and assisting the prosecution. This witness and Van Bibber both denied these accusations. The questions to which objections were sustained related to when and the

length of time the Buick car was in the possession of one Clyde Smith, and whether or not there was a reward offered for its recovery. This portion of the record discloses that the defendant was permitted to cross-examine this witness at some length concerning this Buick car, and we think the court committed no error in limiting further cross-examination on matters purely collateral and not germane to the issue. Defendant's efforts to impeach the witness were unsuccessful, and any answers which might have been given to the questions propounded, in the light of the answers which were given, would have no tendency to impeach the witness.

Defendant complains also that the court erred in sustaining objections to questions propounded to the county attorney, who was called as a witness for the defendant. These questions related to whether or not there was a reward offered for the return of the stolen Buick car. There was no connection shown between the theft of this Buick car and the Hudson car here in controversy, and testimony concerning the theft of the Buick would have no tendency to elucidate the issues here, but, on the contrary, might tend to confuse the jury. There was no error in excluding this testimony.

Charles Reed, chief of police of the town of Alva, was called as a witness for the defendant, and the following questions were propounded to him:

"I will ask you, Mr. Reed, if you were present some weeks ago in the office of County Attorney Barry, at a time when Mr. Van Bibber was present, and if you were told at that time that if Chas. Richardson would swear that he saw Emerson Queen drive through the streets of Alva on the night of the larceny with a green Hudson Six that they, or Van Bibber, would give $100."

"I will ask you further if after you left the office of the county attorney if Mr. Van Bibber followed you out of the office, and said he would make it $200."

To both of these questions objections were interposed and sustained. The following question was then asked the witness:

"I will ask you if in accordance with that conversation if you didn't talk to Richardson and Richardson went and took a look at Emerson Queen, and stated to you that he wasn't the man that he saw with a green car?"

To this Reed answered "Yes," but the answer was stricken.

If we understand the purpose of the defendant, these questions were propounded for the purpose of impeaching Van Bibber, who, on cross-examination, had testified as follows:

"Mr. Van Bibber, did you have a conversation with Charles Reed, city marshal of this city, in the office of County Attorney Barry some weeks ago in which you told Reed to— that if he could get Charles Richardson, a citizen of this town, to swear that he saw Emerson Queen and Jay Elliott drive this green Hudson car through Alva that you would give him $100? A. No, sir.

"Q. Didn't have such a conversation at all? A. I didn't.

"Q. I will ask you further than that, after Mr. Reed left the office and had gotten out of the office, if you didn't follow him, and if you didn't tell him you would give $200? A. He is a liar, and anybody else that said I said that he is a d—— liar too."

Defendant made no formal offer showing the facts or circumstances which he expected to prove by this witness. Under such circumstances this court cannot review the rulings of the trial court or hold that material error was committed in the rejection of competent testimony. In order to make the necessary showing that this testimony would have been competent and material, upon request of the defendant the jury could have been withdrawn, and the court could have heard

the answers of the witness. Then the record would have shown what the rejected evidence was, and this court would be in a position to pass upon the question. As the record stands, we cannot say that the trial court committed material or prejudicial error in excluding the testimony complained of. Price v. State, 1 Okla. Cr. 375, 98 Pac. 455; White v. State, 4 Okla. Cr. 160, 111 Pac. 1017; Warren v. State, 6 Okla. Cr. 1, 115 Pac. 812, 34 L. R. A. (N. S.) 1121; Collingwood v. State, 13 Okla. Cr. 443, 164 Pac. 1154; Johnson v. State, 15 Okla. Cr. 297, 176 Pac. 256; Cheeves v. State, 18 Okla. Cr. 480, 196 Pac. 726.

Further, in attempting to lay a foundation for this testimony, it will be noted that Van Bibber was asked, in effect, if he did not attempt to have Reed make an effort to corrupt Richardson, who was a witness for the state; the questions propounded to Reed were of a different import. This variance made it all the more necessary that a formal offer should have been made in order to apprise the court of the nature and import of the testimony sought.

Other assignments of error have been urged, but in our opinion these are without merit, and need not be analyzed. No prejudicial error appearing in the record, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.