Henry WILLIAMS, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13121.

Court of Criminal Appeals of Oklahoma.

June 20, 1962.

Rehearing Denied July 18, 1962.

86

Don Anderson, Public Defender, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Ass't. Att'y. Gen., for defendant in error.

BUSSEY, Judge.

This is an appeal from the District Court of Oklahoma County, Oklahoma, perfected by Henry Williams, Jr., defendant below, from a judgment and sentence rendered in case No. 26889 on the 11th day of April, 1961, wherein the defendant was charged, tried and found guilty of the offense of armed robbery and his punishment fixed by the jury at nine years in the State Penitentiary.

A review of the casemade discloses the following, uncontroverted facts.

On the evening of January 14, 1961, Henry Lester Mannan, a driver for an Oklahoma City taxicab company, picked up a passenger in his taxicab on Sixth Street, just east of Walnut Street, in Oklahoma City and drove the passenger to various places for approximately one hour, after which the passenger requested that Mr. Mannan stop, drew a gun on him, and robbed him of approximately $21.00, thereafter fleeing the scene of the robbery on foot and successfully affecting his escape.

Mr. Mannan testified that on January 23, 1961, he identified the defendant in a

line-up at the Oklahoma City Police Station as the person who robbed him.

Upon the trial of the defendant, the witness, Mannan, while on the witness stand, once again positively identified the defendant as the person who robbed him during the evening of January 14, 1961.

Officers Don R. Schimmels and Andrew J. Clovis of the Oklahoma City Police Department testified, without objection being interposed, that on the evening of January 23, 1961, while investigating an armed robbery, they took defendant into custody. Police Officer J. W. (Jack) Smith testified, without objection being made, that later that day (January 23, 1961), the defendant was placed in a line-up at the Oklahoma City Police Department, and that Mr. Mannan identified the defendant.

Following the examination in chief, the state introduced into evidence, without objection from the defendant, a toy cap pistol which Officer Schimmels observed the defendant to remove from his person and place on the floorboard of the police car after his arrest on the night of January 23, 1961.

At the conclusion of the state's testimony, the defendant was called to the stand and testified on direct examination that he was not acquainted with Mr. Mannan, that he did not rob him on the night of January 14, 1961, and that the first time he had ever seen Mr. Mannan was when the latter identified him in the police line-up conducted at the Oklahoma City Police Headquarters on the evening of January 23, 1961.

Defendant admitted having the toy cap pistol in his possession and identified it as belonging to his two year old nephew.

He testified concerning the details of his arrest and detention and stated that during the month of January, and prior to the evening of his arrest, he was working out of Manpower Incorporated, an Oklahoma City employment concern.

It is the defendant's contention that prejudicial and reversible error was committed when the following questions were propounded and the following rulings made during cross examination of him.

"Q. Where did you say you worked that day?

"A. I worked out of Manpower.

"Q. Where?

"A. Manpower.

"Q. Where is that?

"A. On Hudson Street.

"Q. Whereabouts on Hudson?

"A. Between Fourth and Fifth, on Hudson.

"Q. What kind of place is that?

"A. This is a corporation, when you don't have steady employment, they will give you a job each and every day until you get a permanent job.

"Q. And you worked out there that day?

"A. I worked out of there that day.

"Q. What did you do?

"A. I worked for Leonhardt Lumber Company.

"Q. What were you doing?

"A. Helping unload box cars.

"Q. How did they pay you?

"A. They paid $1.20 an hour.

"Q. How did they pay it?

"A. In check.

"Q. Did you get a check that day?

"A. I did.

"Q. Where did you cash it?

"A. I cashed it at Jones Brothers Store.

"Q. How much was it?

"A. I made $8.10, I believe it was.

*     *     *     *     *     *

"Q. Where were you on the 7th day of January, 1961?

"A. I can't recall.

"Q. Do you have any idea?

"THE COURT: is that previous to this charge?

"MR. ANDERSON: I want to object to that, if your honor please.

"THE COURT: It will be sustained.

"MR. MOUNGER: It is for the purpose of testing his memory, Your Honor.

"THE COURT: It will be sustained.

"Q. That is January 7th, you say?

"A. Yes.

"Q. That would be on Saturday? Is that correct? I happened to be with my girl friend.

"Mr. Anderson: The court has sustained the objection and you don't have to answer.

"THE COURT: All right, let's proceed. Go ahead.

"Q. You say you were with your girl friend?

"Mr. Anderson: I object to this question that relates to a time prior to the commission of the offense with which this man is charged.

"THE COURT: Sustained.

"Q. What is your girl friend's name?

"A. Mardine Lyon.

"Q. Where does she live?

"A. She lives at 1727 Northeast 3rd.

"Q. Where is she now?

"A. At work.

"Q. Where does she work?

"A. At the White Swan Laundry.

"Q. The White Swan Laundry?

"A. Correct.

"Q. Is she going to be a witness here for you today?

"Mr. Anderson: Now, if the Court please, none of these questions counsel is asking could be testing this witness's recollection.

"THE COURT: Make your objection. I didn't hear it.

"MR. Anderson: Object to it as being incompetent, irrelevant and immaterial.

"THE COURT: The objection will be sustained.

"Q. Well, you have talked with the officers about this, haven't you?

"A. Which officers?

"Q. Any officers?

"A. How do you mean?

"Q. Well, you got arrested on the 23rd, didn't you?

"A. That is right.

"Q. And they took you down to the Oklahoma City Police Station, isn't that right?

"A. Yes, it is.

"Q. Now, you talked to the officers, didn't you?

"A. I talked to several of them down there.

"Q. All right, what did you tell them?

"A. The same thing that I am telling you.

*    *    *    *    *    *

"Q. I believe you testified several people were down there. Is that right?

"A. Sir?

"Q. I believe you testified several people were down there. Is that right?

"A. Down where?

"Q. At the police station.

"A. Sure.

"Q. Do you remember Mr. Dale Burton McMullen being down there?

"A. McMullen?

"Q. Yes.

"A. I wouldn't know him by name.

"Q. You don't know that he was down there and told where you were on the 7th do you?

"Mr. Anderson: I object to that question as being incompetent, irrelevant and immaterial.

"THE COURT: The objection will be sustained, and Ladies and Gentlemen of the Jury, you are instructed not to consider the question as being prejudicial to this defendant.

"Mr. Anderson: And I ask the Court to admonish counsel not to keep going back to that.

"THE COURT: Yes don't go back prior to the 14th of January, if you want to follow the rules of evidence on it.

"Q. That is all."

The next witness called to testify for the state was Charles E. Gray, manager of the Industrial Division of Manpower, Inc., and in rebuttal of the defendant's testimony, the following testimony was given and the following rulings made:

"Q. State your name to the court and jury.

"A. Charles E. Gray.

"Q. What is your business, Mr. Gray?

"A. I am manager of the Industrial Division of Manpower, Inc.

"Q. As such manager, do you have charge of the records of the men you send out?

"A. That is right, sir.

"Q. I will ask you, please, sir, if your records show on the 23rd day of January, 1961, that a Henry Williams was sent out by your department?

"A. No, sir.

"Mr. Anderson: Wait a minute, please, sir. To which the defendant objects as being incompetent, irrelevant and immaterial and not tending to prove any issue of guilt or innocence in this case.

"This is an effort to impeach this defendant on a collateral issue, unless the time is fixed as of the time the witness said the hijacking occurred.

"THE COURT: Overruled.

"Mr. Anderson: Exception.

"Q. The court said you may answer.

"A. I have records of every man who worked for me in January of 1961, the alphabetical file, beginning with 'a' through 'Z' and I also have in my possession the Social Security report that Manpower, Inc., as an organization submits to the Federal government for the Social Security Administration. There appears in this report no Williams in the 'w' category.

"Q. That is all, sir."

*Cross Examination*

"By Mr. Anderson:

"Q. Mr. Gray, do you know this man sitting at the table here?

"A. I have seen him, yes, sir. He has been in my office and has worked for me.

"Q. Thank you."

*Redirect Examination*

"Q. But he didn't work for you in January?

"A. No, sir.

"Mr. Anderson: Object to that as repetition.

"THE COURT: Overruled.

"Mr. Mounger (for the state) That is all."

Whereupon the court excused the witness, and the state and the defendant rested.

■ It should be observed at this point that the defendant assigns as error other questions asked by the county attorney in cross-examination of the defendant. We have carefully examined the record and find that no objection was interposed by the defendant to these questions nor exception made and they will not be dealt with in this opinion. Suffice it to say that had the defendant properly objected to these questions and reserved his exceptions, they would not constitute sufficient grounds for reversal.

The fabric of the defendant's brief is so intertwined with statements of facts and conclusions of law, supported by authority, that it is difficult to state succinctly his contentions, but as your writer understands the defendant's brief he seeks a reversal of this cause on several assignments of error. They are:

1. That the defendant was deprived of his constitutional right to a fair and im-

partial trial by reason of the questions asked of the defendant on cross examination concerning his activities on January 7, 1961. It is further urged that this error was compounded when the defendant was asked:

"You don't know that he (Dale Burton McMullin) was down there (Oklahoma City Police Station) and told where you were on the 7th do you?"

■ These questions were improper and exceeded the scope of cross-examination and had the court not sustained the objections to them, the same would have constituted error.

■ But as has been stated many times by this Court:

"It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his susbtantial rights by the commission of error." See Murphy v. State, 72 Okl.Cr. 1, 112 P.2d 438.

We are constrained to view this assignment of error as being without merit since the court correctly sustained the objections to the questions asked and in the latter instance admonished the jury to disregard the question. Moreover it should be observed that the questions propounded did not accuse the defendant of a criminal offense or constitute an attack upon the character of the defendant, which had not been placed in issue.

It is next contended that the court committed reversible error by allowing the state to introduce the testimony of Mr. Charles E. Gray in rebuttal establishing that the defendant did not work for Manpower, Inc., on the 23rd day of January, or during the month of January, 1961. It is the defendant's contention that this was impeachment on a collateral matter and that when the state had questioned the defendant on cross-examination on this collateral matter, the State was bound by defendant's answer and could not, thereafter, introduce on re-

buttal, testimony contrary to the answer given by the witness.

In support of this contention the defendant cites the following authorities:

Scott v. State, 50 Okl.Cr. 396, 298 P. 626, 627; McNeill v. State, 18 Okl. Cr. 1, 192 P. 256; Queen v. State, 23 Okl.Cr. 146, 147, 212 P. 1021; Whitlow v. State, 24 Okl.Cr. 307, 218 P. 162; Golding v. State, 44 Okl.Cr. 433, 281 P. 322; 1 Greenleaf, Section 449; Payne v. State, 10 Okl.Cr. 314, 136 P. 201, 202; Willis v. State, 13 Okl.Cr. 700, 167 P. 333; State v. Haynes, 7 N.D. 70, 72 N.W. 923; Hall v. State, 51 Okl.Cr. 50, 299 P. 508, 509; Clark v. State, 95 Okl.Cr. 119, 239 P.2d 797; Tarter v. State, Okl.Cr., 359 P.2d 596.

It is conceded by the Attorney General that the defendant correctly states the principle of law herein involved, but the Attorney General argues that the rule adduced in Murphy v. State, supra, is controlling.

■ We have carefully examined the authorities cited in defendant's brief and observe that in every instance wherein a reversal was granted, the improper rebuttal testimony offered was prejudicial per se in that it was either based on the opinion of the witness or related to the alleged commission of crimes not connected with the offense for which the accused stood trial.

■ There is nothing in the record to support the defendant's statement that, on closing argument, the county attorney stated in substance: "that if the defendant would lie to the jury in one instance he would also lie to the jury about his guilt".

We do not deem it necessary to speculate as to the correctness of this assertion. Had the defendant wished to preserve the arguments of the county attorney, the statutes of this state afford him ample opportunity to so do.

We shall therefore concern ourselves with the question of whether this conviction should be reversed because the State was allowed to show on rebuttal that the defendant was not employed as he had stated that

he was on a date nine days after commission of the robbery of which he stands convicted.

From the record it affirmatively appears that the defendant opened the field of inquiry when on direct examination the following testimony was adduced:

"Q. Prior to your arrest, back in January, what was your work, what kind of work did you do?

"A. Well, I was doing roofing for Barnhill-Allen Roofing Company, and after winter, after it got cold, he let so many off because he didn't have sufficient work to keep us on and let a lot of us off, I worked out of Manpower, Inc."

■ We believe that the rule stated in Radney v. State, 36 Okl.Cr. 240, 253 P. 913, is particularly applicable in the case at bar. Therein it was stated:

"The rule is well settled that, ordinarily, a party may not complain of an error which he himself has invited, or which he has waived, either expressly or impliedly. This rule clearly applies to a case where one party resorts to incompetent evidence without objections, and where the opposite party replies with evidence of the same character. In such case, both are at fault and neither can complain in this court of the admission or exclusion of the evidence by the court below. 1 Wig.Ev. (2d Ed.) par. 15, p. 156; Id., § 19, p. 189."

■ This being so, we hold that the error complained of was invited by the accused and that the same does not constitute grounds for reversal under the facts and record herein presented.

■ It is lastly contended that evidence was wholly insufficient to support the conviction.

■ In this connection we observe that while the evidence of the state and the defendant was conflicting this presented a question of fact solely for the determination of the jury.

It is probable that the jury elected to believe the testimony of Mr. Mannan rather than the testimony of the defendant in view of the defendant's admission on cross-examination that he had twice been convicted of felonies.

■ In Jenkins v. State, 57 Okl.Cr. 45, 45 P.2d 161, this court said:

Conflicting issues of fact are for the the sole determination of the jury; the conviction will not be disturbed on appeal because of sharp conflict in the evidence, if the evidence adduced reasonably tends to support the verdict and judgment.

We are of the opinion that the evidence, although conflicting, supports the judgment and sentence of the trial court.

For the reasons above set forth, the conviction is affirmed.

NIX, P. J., and BRETT, J., concur.