**Joe Allen JOHNSON, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13332.**

Court of Criminal Appeals of Oklahoma.

Oct. 16, 1963.

John D. Harris, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Joe Allen Johnson, hereinafter referred to as defendant, was charged by information with the premeditated death of Hugh Greer, Tulsa Police Officer. Upon a verdict of Guilty by the Jury, he was sentenced to Life Imprisonment in Oklahoma State Penitentiary, and from said Judgment and Sentence, he now appeals.

From the record, it appears that shortly before midnight on April 26, 1962, the defendant and one Danny McGinnis, went to the Safeway Store located at 1706 South Boston, Tulsa, for the purpose of burglarizing same.

Attempting to gain entrance to the establishment by prying the lock from the rear door of the store, they were interrupted by the approach of a police cruiser, summoned by a Mr. Elwood J. Allen, who had observed them attempting to open the door. Defendant fled down an alley, entering the back porch of J. B. Hillenburg, 1725 South Baltimore, where he secreted himself in a small bathroom, just off the back porch. The defendant had been observed on the back porch by Mrs. Hillenburg, who related the occurrence to her husband. He, in turn, transmitted this information to Officers Hugh Greer and Ray Burch, who were searching the area for the burglars. The officers went through the house to the back porch where the testimony of Officer Burch discloses (in substance) that:

"The officers shoved open the door to the half bath and it bounded back. Holding it open, they could see that some one was standing behind the door. They identified themselves as Officers and ordered the defendant out. Receiving no response, Officer Greer

went in and brought the defendant out while Officer Burch covered him. The defendant was searched for weapons and when officer Burch attempted to place the handcuffs upon him a struggle ensued. Being unable to subdue the defendant in the close confines of back porch the Officers shoved the defendant outside the back door. Somehow as the two officers emerged from the door the defendant seized Greer's gun and aimed it at Officers Greer and Burch, announcing his intention to shoot them. Burch immediately fired his weapon, and was struck in the face by a bullet from the gun fired by the defendant. Burch fired a second time, then fell to the ground near Officer Greer. The defendant then fired several more shots."

After emptying his gun, the defendant, having received a bullet wound in the chest in the affray, staggered up the street where he was disarmed of Officer Greer's gun and placed under arrest by Tulsa Police Officer, Charley Jones.

Officer Greer's body was taken to Hillcrest Medical Center where an autopsy was performed by Dr. Leo Lowbeer. Two bullets were removed from the body of the deceased and both were sent to the FBI Laboratory in Washington, D. C., along with the .38 caliber Smith and Wesson pistol of Officer Greer and the .38 Special Military Police, Smith and Wesson of Officer Burch. The non-fatal bullet removed from Officer Greer's body was identified by Mr. Cortlandt Cunningham, FBI Balistics Expert, as having been fired from Officer Greer's .38 caliber Smith and Wesson, however, the bullet which had been identified by Dr. Lowbeer, as the one producing Greer's death, was so badly mutilated, Cunningham could not determine whether it had been fired from the .38 Smith and Wesson belonging to Greer or the .38 Special Military Police, Smith and Wesson belonging to Burch.

The State introduced testimony of Charley Jones, Vice Squad Officer, Tulsa Police Department; Johnny Lee Thurber, who shared a room with the defendant, Johnson, at the hospital after the shooting; and officer Bill Harp, Tulsa Police Officer. All of these witnesses testified that the defendant, Johnson, had admitted shooting both officers and the most comprehensive admission made by the accused was related in the testimony of Officer Bill Harp; he testified that:

"We asked Johnson if he would care to tell us his side of the story as to what took place on the night of April 26th. He told us that he had been drinking at Mary's Club on East 6th Street with a subject by the name of Danny McGinnis; stated that Danny told him that he knew where (OBJECTION, OVERRULED) * * * said that Danny told him he knew where they could make a good score and obtain some beer (OBJECTION, OVERRULED). That he knew where they could get two or three cases of beer; that they had been drinking earlier in the evening; Danny obtained a car at approximately 11:30 P.M. and they drove to the Safeway Store, at Seventeenth and Boston; stated that he and Danny took turns trying to open the back door of the Safeway Store, while the other would 'stand on the street corner watching for the police, and he stated that he was standing on the north side of Seventeenth Street, which is just at the south end—at the north end of the Safeway Store, when he saw a police car coming and he yelled 'jiggers' and ran, and from that time on he never saw Danny McGinnis again; stated that he ran south down the alley from Seventeenth and Boston, jumped a fence into a back yard, opened the door to a screened porch and went inside and when he got inside he went on into a bathroom, located on the north end of this porch and was hiding in there until he heard the officers come into the house; stated he heard the officers talking when they

came through the front door of the house and they came through the house, came to the back porch. One of them opened the back door and pulled him out of the bathroom onto the back porch. At that time he heard one of the officers tell the other one, 'give me the handcuffs.'

"There was a scuffle and he stated that he thought he was hit on the head with something, that he thought was a pair of handcuffs at that time, and Officer Greer grabbed him and pulled him on out the back door, into the back yard of the house; as soon as they got out into the back yard he stated that Officer Greer pulled his pistol and had it on him and told him not to run. He stated that he thought he heard a click as if the hammer was being pulled back on Officer Greer's gun. At that time he lunged for the gun, was trying to wrestle the gun away from Officer Greer, and while they were wrestling the gun went off and he said he felt Officer Greer go suddenly limp and his hold on the pistol relaxed and he pulled the gun away from him without any effort. As soon as he had the gun wrestled from Officer Greer, he stated that Officer Burch fired and shot a shot at him and he felt himself being hit and at the same time he turned and fired at Officer Burch. He saw that they were both lying on the ground and he said that he might have fired two shots at Officer Burch, he didn't recall whether he had fired one shot or two. About that time he heard some men coming out of a bakery, located just across the alley east from the back yard and he emptied the rest of the shells in the gun; stated that he thought it might frighten them back inside and then he ran. The next he remembered he was lying in the street, Eighteenth and Baltimore, I believe."

The defendant's principal contention in seeking reversal is that under the evidence as outlined above, "that there is not one iota of evidence or even an inference that the defendant hastened, accelerated, or contributed to the death of the deceased."

And further that the Court erred in (1) failing to sustain a demur to the evidence of the State and (2) further compounded this error by instructing the Jury in part that:

"In this connection, if you find and believe from the evidence beyond a reasonable doubt that the defendant, at the time and place alleged was engaged in the commission of a felony, and that such felony set in motion a chain of events which were or should have been within his contemplation when the motion was instigated, it is then immaterial as to whether the defendant fired the fatal bullet."

If the Court properly instructed the Jury on this crucial point, then the evidence as above set forth is sufficient to support the conviction. If, on the other hand, as contended by the defendant the Court incorrectly instructed the Jury, and by so doing committed fundamental error, then this conviction must be set aside.

In support of his contentions the defendant relies upon the language used in Baker v. State, 65 Okl.Cr. 136, 83 P.2d 586, citing 13 RCL Par. 53, p. 748:

"* * * On the other hand, if an injury is merely a condition which does not contribute to produce death, the law does not hold the actor criminally responsible."

And further:

"[T]hat a person may not be held criminally responsible for a killing unless the homicide were either actually or constructively committed by him; and, in order to be his act, it must be committed by his own hand, or by some one acting in concert with him, or in furtherance of a common design or purpose." State v. Oxendine, 187 N.C. 658, 122 S.E. 568, 570.

In the instant case, the defendant was proceeding on a mission of crime and

being thwarted by the approach of the law, broke and entered the dwelling of the Hillenbergs'. His unlawful resistence and announced intention to destroy Officers Greer and Burch accompanied by the present power of execution was instinctively repelled with retaliation by Officer Burch, and whether in the confused seconds that followed, his murderous assault, or the spontaneous retaliatory shots fired by Burch, produced the death of Greer, the author's (accused) purpose was accomplished.

We believe the authorities cited by the Attorney General are particularly applicable here. In People v. Podolski, 332 Mich. 508, 52 N.W.2d 201, it was held that:

"When a defendant deliberately engenders an affray, deliberately using therein a lethal weapon, it must be considered to be within his intent that death should result from the affray as a natural and probable consequence of his acts, where the death is directly attributable to the affray and not resulting from some independent intervening cause." See, also, Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472, 1958.

██ We therefore hold that where, as in the instant case, an accused commits an assault designed to produce injury or death upon officers of the law, and injury or death does result without any intervening cause, but from an instinctive retaliatory force, the accused is criminally responsible. This decision should not be construed as extending beyond the facts of the instant case and instruction such as given by the court should only be given where similar facts exist.

There are other assignments of error urged by the defendant and while well presented and argued they are not of such fundamental nature as would require reversal, and we will deal with them only briefly.

Defendant contends: That the trial court committed error in the following instances:

(1) When the Court refused to permit defendant to cross-examine Dr. Low-beer, concerning his testimony on the trial of another cause.

(2) When the Court refused to order a continuance when during the course of the trial, defendant requested same for the purpose of subpoenaing the record of the hospital where he was treated after the slaying.

(3) When the Court refused to instruct the jury on the included offense of Manslaughter in the first or second degree. And further;

(4) That the remarks of the County Attorney were prejudicial

(5) That the sentence imposed was excessive.

██ (1) Although this Court has upheld the right of counsel to the exercise of wide latitude in cross-examination, we have also ruled that the scope of cross-examination rests largely in the discretion of the trial court (Ralston v. State, 54 Okl.Cr. 408, 22 P.2d 1038) and that the limiting of cross-examination of a witness concerning matters purely collateral and not germane to the issue by the trial court is not error. (Queen v. State, 23 Okl.Cr. 146, 212 P. 1021.)

██ In our opinion, testimony given on another trial in a cause entirely unrelated to the one at issue is purely collateral and irrelevant, and the trial court did not abuse its discretion by limiting such examination.

██ (2) The Court of Criminal Appeals has uniformly held that the granting or denial of a motion for continuance is addressed to the sound discretion of the trial court, and that the actions of the trial court will not be disturbed unless it appears that he acted in an arbitrary or capricious manner. Nipp v. State, Okl.Cr., 374 P.2d 624. In this connection, the rules governing the granting or denial of a recess are identical with those governing the granting or denial of a continuance.

██ That counsel in the case at bar did not exert due diligence in procuring the records of the hospital before the cause went to trial, can not now be urged by the

defendant as grounds for reversal; nor, **in** view of the record can he attack the discretion of the trial court in overruling his motion for continuance.

(3) Defendant complains that the court did not instruct on the included offense of manslaughter.

■ While we have held that the trial court must instruct on the law of manslaughter in the first or second degree if there is any circumstances that could reduce the crime (if said evidence is produced by either the State or defendant), in the case herein we find no evidence produced by either party that tends to contradict the testimony of Officer Ray Burch, the only witness to the slaying. Nor, has counsel introduced any evidence which would indicate any degree of mitigating circumstances that would necessitate the giving of manslaughter instructions to the jury. See, Oglesby v. State, 56 Okl.Cr. 286, 38 P.2d 32.

■ (4) A review of the record discloses that the argument of the County Attorney considered as a whole is not so improper as to compel this court to interfere with the verdict of the jury.

"A conviction will not be reversed because of prosecuting attorney's argument to jury, in absence of showing that such argument, in view of entire record, affected defendant's substantial rights or caused prejudice against him in minds of jurors." Martin v. State [94 Okl.Cr. 340], 235 P.2d 959; Ballard v. State [92 Okl.Cr. 420], 223 P.2d 782; Workman v. State [83 Okl.Cr. 245], 175 P.2d 381.

■ (5) In numerous decisions this court has adhered to the rule that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and that this Court does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. McCluskey v. State, Okl.Cr., 372 P.2d 623.

■ From a careful review of the facts of this case, and in accordance with the authorities of law and previous decisions of the Court, we are of the opinion, that the judgment and sentence of the District Court of Tulsa County should be, and the same is hereby affirmed.

NIX and JOHNSON, JJ., concur.