**Gene Phillip HARTMAN, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15659.**

Court of Criminal Appeals of Oklahoma.

July 29, 1970.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., for defendant in error.

BUSSEY, Judge.

Gene Phillip Hartman, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Okla-homa County for the crime of Burglary in the Second Degree; his punishment was fixed at two years imprisonment in the state penitentiary, and he appeals.

On the trial Tressa Garrett testified that she was one of the owners of Little Dee's Grocery at 1244 S.W. 25th Street in Oklahoma City and that defendant was employed there on March 22, 1969. Although defendant had a key to the store and customarily closed up at night, on that date Mrs. Garrett closed the business. The procedure was that the checks and cash were totalled separately and locked in a pop machine box and the key hidden in a desk drawer. Mrs. Garrett wrote the notation "bag money" on the tape by which she totalled the cash and put the tape away with the money, closing up about 11:15 that night. Another employee, Rudy Redlinger, opened the place the next morning and Mrs. Garrett got there about 6:50 a. m. She discovered that the money she had put away was missing—about $300.00 in checks and over $400.00 in cash. The windows and doors in the place were intact. The next day, a Sunday, she was handed the tape bearing her notation "bag money" by one Harold Richardson. She turned it to the police and identified it in court as State's Exhibit 1.

Rudy Redlinger testified that he worked at Little Dee's Grocery and opened it at 6:45 Sunday morning, March 23rd, and discovered that the door of the cold drink machine was open and no money was there other than pennies. The place looked otherwise undisturbed and the outside door had been locked, so he called Mrs. Garrett to inquire if she had secreted the money some place else. He then called the police. Defendant had quit employment a few days before and turned in his key to Redlinger one day before the money was missing. The amount of money noted on the tape that Richardson brought in that Sunday corresponded to the penny to the missing amount of money entered in their store checkup sheet.

A hearing was held outside the presence of the jury to determine the competency

of Betty M. Evans as a witness. She testified that she had known defendant about seven months; they had taken a marriage license in Barstow, California, and had gone through a marriage ceremony there. She considered herself as defendant's wife up until she was arrested in July, 1969. She had married Rex Zeb Evans in July, 1967, and was living with him when defendant moved in the household and stayed about a month. Evans then went to the mental institution at Norman, and she took up with defendant. Evans had commenced divorce proceedings, but told her he had not completed the action. She went with defendant to Little Rock, then California, where she went through the marriage proceedings with defendant—"So I wouldn't have to testify against him." (R40).

Counsel found the marriage license issued July 22, 1967, to Rex Zeb Evans and Betty M. Evans and returned to record July 27, 1967. Search in Oklahoma County disclosed no divorce action commenced between them in 1968 or 1969, whereupon the court ruled that she was a competent witness.

Before the jury, Betty M. Evans testified that on March 22, 1969, she lived with defendant in an apartment over the Walk-In-Tavern at 1300 S.W. 29th Street in Oklahoma City. She was working at the tavern that night, when defendant came in about 12:30 and said "he was going to take Little Dee's." (R56). He left and returned and left again and returned, each absence being about ten or fifteen minutes, and on his return showed her a roll of bills. Defendant had told her he was going to have a duplicate key to Little Dee's made. "He said he should get a key made and go in and take the place." (R59). Defendant was drunk at the time. After she closed the tavern that night she and defendant left for Little Rock, Arkansas. After she had married Evans she continued to use the name Williams because her credit was good and his was not. Everyone thought Evans was her brother. She and defendant returned from California to Oklahoma City and she lived with

him about four days, then returned to living with Evans. She decided she was not married to defendant when Evans told her that he (Evans) had never divorced her. She was under charges involving checks in which sentence was deferred for a period of one year.

Harold Richardson testified that he operated the Walk-In-Tavern and Betty Evans worked for him, she and defendant living in the apartment upstairs. On March 23, 1969, he went upstairs and discovered that they had moved out. He found the adding machine tape, State's Exhibit 1, on a table in the apartment. He gave it to Redlinger, because he had heard that defendant was trying to sell cigarettes in the tavern and he knew that defendant had worked at Little Dee's Grocery.

Defendant did not testify nor offer evidence in his behalf.

■ On appeal it is first argued that the evidence is insufficient to support the verdict of the jury. In this regard we reiterate our holding in Ryans v. State, Okl. Cr., 420 P.2d 556, in which we stated in the fifth paragraph of the Syllabus:

"Before the Court of Criminal Appeals will interfere with verdict of jury on ground that evidence was insufficient to sustain conviction, there must be no competent evidence in the record upon which the verdict could be based."

In the instant case there was competent evidence in the record upon which the verdict could be based, and we are of the opinion that this assignment of error is without merit.

■ It is lastly contended that the punishment imposed was excessive. We have repeatedly held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and this Court does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the court. See LaRue v. State, Okl.Cr., 404 P.2d 73; Johnson v.

State, Okl.Cr., 386 P.2d 336; Hudson v. State, Okl.Cr., 374 P.2d 923.

■ In the instant case the jury assessed the minimum punishment provided by law, and this certainly does not shock the conscience of the Court. Under these circumstances, we are of the opinion that this assignment of error is also without merit.

Having dealt with the assignments of error urged on appeal, and finding that the evidence supported the verdict, the punishment imposed was well within the range provided by law, and the record was free from fundamental error, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

TOM BRETT, P. J., and NIX, J., concur.